STATE OF NEBRASKA, APPELLEE, V. WILLIAM K. SMITH, APPELLANT.

480 N.W.2d 705

Filed February 28, 1992.    No. S-90-1152.

Thomas M. Kenney, Douglas County Public Defender, and Brian S. Munnelly for appellant.

Don Stenberg, Attorney General, and Donald A. Kohtz for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

FAHRNBRUCH, J.

William K. Smith appeals his conviction and life sentence for the second degree murder of 15-year-old Raymond M. Witt, who died of multiple injuries after he was beaten, his head was banged against a guardrail, and he was thrown from a balcony to a concrete loading dock some 21 feet below the balcony.

Having waived a jury trial, Smith was tried by a judge of the district court for Douglas County.

On appeal, the defendant claims (1) that the evidence was insufficient to convict him of second degree murder and (2) that the sentence imposed by the trial judge is excessive. We affirm Smith's conviction and the sentence imposed by the trial judge.

In determining the sufficiency of the evidence to support a finding of guilt in a criminal case, an appellate court does not resolve conflicts in the evidence, determine the plausibility of explanations, or weigh.the evidence. Those matters are for the finder of fact, whose findings must be sustained if, taking the view most favorable to the State, there is sufficient.evidence to support them. *State v. Laymon*, 239 Neb. 80, 474 N.W.2d 458 (1991).

Five youthful eyewitnesses placed Smith, then 17 years of age, at the Westroads Shopping Center in Omaha on September

16, 1989, the date Raymond Witt was injured and died at the mall. All of the youths testified that while at the Westroads, the defendant was attempting to locate a "skinhead" named "Eric" whom he suspected of spreading rumors about Smith's involvement in a satanic cult. Three of the eyewitnesses testified variously that Smith was angry and "geared up for a fight," that he "wanted to beat . . . up" Eric, and that Smith stated he was going to "kick his ass." The defendant was unable to locate Eric.

Two of the eyewitnesses testified that a confrontation occurred between Smith and Witt, who was a stranger to the defendant. One witness testified that the defendant chased Witt to an outside second-floor walkway (the balcony) after Witt passed by the defendant inside the mall and hit him in the back of the head. The other witness denied seeing that incident and claimed that the defendant simply saw Witt on the outside walkway, approached him, and began "just throwing him [Witt] around." Asked if he were able to explain to Witt's parents why their son was dead, this witness answered: "A case of mistaken identity. . . . All I know is we went after one guy and ended up getting another."

Both eyewitnesses to the confrontation testified that at no time did Witt fight back or offer significant resistance. Both recalled that in the midst of Witt's beating, the defendant ordered them to leave the area. One of them obeyed the defendant. The other, a 12-year-old boy, remained at the scene, hidden from the defendant's view. He testified that he saw the defendant strike Witt in the chest and stomach, slam Witt's forehead against a metal railing surrounding the walkway, and roll Witt's unconscious body over the railing to a concrete loading dock some 21 feet below the balcony.

A pathologist testified that Witt died from multiple injuries to his head and chest as a result of a "blunt impact" to the back of his head and the back of his chest. The doctor testified that Witt suffered extensive fractures in the back of his skull, which fractures extended up into the base of the midportion of the skull; multiple bruises to the brain; a ruptured aorta, with resultant extensive bleeding into both chest cavities; fractures of several ribs in the back of the chest; and multiple contusions

of the arms, hands, and legs.

Taking the view most favorable to the State, there is more than sufficient evidence from which a fact finder could find beyond a reasonable doubt that Witt received his fatal injuries when the defendant threw Witt's unconscious body from the Westroads balcony to a concrete loading dock below, a distance of 21 feet.

The pathologist testified that Witt's forehead and the bridge of his nose bore linear scrape marks which were consistent with impact against a blunt object such as the railing which surrounded the outside second-floor walkway. The doctor said that these facial injuries were severe enough to have caused unconsciousness. Although he believed that Witt had lived for a brief time after his fall, the doctor testified the boy's injuries were such that he could not ultimately have survived despite immediate treatment.

In his defense, Smith, his parents, and his sister each testified that he was at home on September 16, 1989, eating dinner until around 6:30 p.m., the approximate time that Witt was injured and died. Smith's girl friend testified that she and Smith attended a party around 7 p.m. The defendant's parents acknowledged that in the 8 months prior to trial, during which time their son remained in jail, they had not informed the police of his alibi.

The defendant claimed that all of the five eyewitnesses were incorrect or lying in their testimony that placed him at the Westroads on September 16, 1989. Although Smith himself initially told police that he was present at the Westroads on the day Witt was murdered, he testified at trial that he had been confused about the date. He said that he was at the Westroads looking for Eric in October and that all of the others were simply a month off in their calculations. Smith also testified that the others were "lying to just get back at me," although he was unsure why they would do so.

The defendant, in his first assignment of error, contends that the evidence is insufficient to sustain his conviction of second degree murder. "A person commits murder in the second degree if he causes the death of a person intentionally, but without premeditation." Neb. Rev. Stat. § 28-304(1) (Reissue 1989).

" 'The essential elements in the crime of murder in the second degree are that the killing be done purposely and maliciously.' " . . . ". . . 'The elements of malice and intent concern the state of mind of the slayer. Malice, in its legal sense, denotes that condition of mind which is manifested by intentionally doing a wrongful act without just cause or excuse . . . .' "

. . . [T]his court has stated that malice and intent may be inferred from the words and acts of the defendant, from the facts and circumstances surrounding his or her conduct, and from the evidence relating to the circumstances of the criminal act.

(Citations omitted.) *State v. Illig*, 237 Neb. 598, 614-15, 467 N.W.2d 375, 386-87 (1991).

The evidence shows that the defendant was present at the Westroads on September 16, 1989, anticipating a hostile confrontation with a "skinhead." While in this violent frame of mind, he encountered Witt. There is evidence from two eyewitnesses that the defendant began punching Witt and that Witt offered no significant resistance. The defendant interrupted his beating of Witt long enough to order the two witnesses to leave the scene. He then resumed his attack on the boy, unaware that one person remained behind to witness the assault to its deadly conclusion.

From the defendant's spoken words and from the evidence of his continuing assault on Witt, who did not fight back or offer any significant resistance; of the defendant's banging Witt's head against a railing; and of the defendant's throwing the unconscious Witt's body from an outside second floor walkway to a concrete loading dock 21 feet below the walkway, thereby inflicting the injuries from which Witt died, a fact finder could find beyond a reasonable doubt that Smith intentionally killed Witt without just cause or excuse and that therefore the defendant was guilty of second degree murder.

In his second assignment of error, Smith complains that the sentence imposed is excessive. The defendant was sentenced to life imprisonment and given credit for the 329 days which he served while awaiting trial.

Murder in the second degree is a Class IB felony, punishable

by a term of imprisonment of 10 years to life. See Neb. Rev. Stat. §§ 28-304(2) and 28-105(1) (Reissue 1989). A sentence imposed within the statutory limits will not be disturbed on appeal in the absence of an abuse of discretion by the trial court. *State v. Start*, 239 Neb. 571, 477 N.W.2d 20 (1991). In imposing a sentence, a sentencing judge should consider the defendant's age, mentality, education, experience, and social and cultural background, as well as his or her past criminal record or law-abiding conduct, motivation for the offense, nature of the offense, and the amount of violence involved in the commission of the crime. *State v. Haynie*, 239 Neb. 478, 476 N.W.2d 905 (1991).

In sentencing Smith, the court referred to the deliberate and violent nature of the crime and to the danger the defendant posed to the community. Smith described himself as "high priest" of the "Imperial Order of Unholy," a satanic cult consisting of approximately 10 members. The defendant and some of the other cult members took part in vandalizing 13 area churches. Smith entered pleas of no contest to three felony charges in connection with these vandalizations, for which he was also sentenced to prison. An investigation into satanic activity led police to question the 12-year-old member of Smith's cult who was the eyewitness to Witt's murder. The 12-year-old's statements to police resulted in Smith's arrest for Witt's murder. Smith admitted to being a regular user of marijuana and stated that he had also used LSD and "mesc."

When we consider Smith's background, the nature of the offense of which he was convicted, the amount of violence involved, the viciousness with which the crime was committed, and the fact that any lesser sentence would depreciate the seriousness of the crime Smith committed, it cannot be said that the trial court abused its discretion in sentencing the defendant.

AFFIRMED.