STATE OF NEBRASKA, APPELLEE, V. BRENDA J. FARR, APPELLANT.

493 N.W.2d 638

Filed October 6, 1992.    No. A-91-418.

David W. Jorgensen, of Nye, Hervert, Jorgensen & Watson, P.C., for appellant.

Don Stenberg, Attorney General, and Mark D. Starr for appellee.

HANNON, IRWIN, and WRIGHT, Judges.

IRWIN, Judge.

This is a criminal case in which Brenda J. Farr, appellant, was convicted by a jury in the county court for Dawson County, Nebraska, of third degree assault/fight by mutual consent, see Neb. Rev. Stat. § 28-310 (Reissue 1989). After a presentence investigation was completed, appellant was sentenced to 5 days

in jail and was ordered to pay all court costs. An appeal to the district court for Dawson County resulted in the conviction and sentence being affirmed. Appellant has now perfected this appeal to the Nebraska Court of Appeals.

Unconvinced by the jury's verdict, appellant assigns as her first error that there was insufficient evidence to prove beyond a reasonable doubt that she committed the crime charged. She also assigns as error evidentiary rulings by the trial court regarding certain testimony and the sentence imposed by the court. We affirm.

With the proliferation of the automobile has come an increase in rude and all too often aggressive behavior by drivers of motor vehicles toward the drivers of other vehicles. This case is an example of such behavior that is so easily avoidable by exercising a modicum of restraint, care, and patience.

## FACTUAL BACKGROUND

Between 8:30 and 9 p.m. on May 27, 1990, Cody Flint was returning home to Overton, Nebraska, on Interstate 80. He had been in Lexington, Nebraska, earlier in the day at the Dawson County Raceway.

While traveling in the passing lane, Flint glanced in his rearview mirror and noticed a car (driven by appellant) approaching from behind at a high rate of speed. Flint signaled and moved into the right-hand lane to allow the car behind him to pass. He testified that after the vehicle passed him, it cut in front of him, making it necessary for him to brake. Flint continued to reduce his speed to increase the distance between himself and the vehicle which had passed him.

He then resumed traveling at 65 miles per hour and caught up with appellant's vehicle. Since appellant's vehicle was then moving somewhat slowly compared to Flint's, he attempted to pass appellant's car, but was cut off by appellant moving into the passing lane and causing Flint to brake suddenly. Flint slowed down and so did appellant. Flint attempted to pass again and was successful this time. After he passed appellant's vehicle, she began flashing her high-beam lights on and off. She proceeded to pass him and then moved into his lane, causing him to quickly brake to prevent a rear end collision. This

scenario was repeated one more time, with Flint catching up to appellant's car, passing it, and then being passed by appellant, who then cut into Flint's lane and this time forced him to veer off the traveled portion of the Interstate to avoid a collision.

Flint exited at the Overton off ramp. Appellant had already exited at this ramp and had stopped her vehicle at the stop sign at the end of the ramp. Despite there being other cars on the ramp between appellant and Flint, she walked back to Flint's car and began calling him names. Appellant had her two sons and a friend of the family in her vehicle while all this was going on.

Flint, exercising reasonable judgment, at least at this point, stayed in his vehicle and drove around appellant's car, as the other drivers had done. He proceeded to a nearby truckstop and called the Nebraska State Patrol to report this entire incident. He was informed that he should go home and that a trooper would meet him there to take a report.

While returning to his car in the truckstop parking lot, Flint was approached by four men. He testified that he was grabbed by one of the men, but struggled free, having his shirt ripped in the process. After managing to get into his car, one of its taillights was smashed and the trunk lid was dented by these individuals. During his testimony, Flint stated that he assumed one of the four individuals may have been appellant's husband. Defense counsel objected to this latter remark on relevancy grounds, and the judge sustained the objection "on the assumption," but overruled it as to relevancy. Defense counsel objected to other portions of this particular testimony on the grounds of relevancy, but the objections were overruled by the court. The witness was cautioned by the court to testify concerning only facts, not assumptions. Defense counsel was also cautioned not to persist in objecting to this line of testimony, based on relevance. Flint continued with his testimony and detailed that he then drove directly home and waited for his parents' return and the trooper's arrival.

After his parents returned home, about 45 minutes later, he and his father, Charles Flint, went outside to examine the damage to the vehicle. While doing this, Cody Flint observed appellant driving by his house. Regrettably, Cody and Charles

Flint took the elder Flint's pickup and began to follow appellant's vehicle. Charles Flint eventually pulled around appellant's car and cut her off, stopping his vehicle in front of hers. Cody Flint exited the pickup and approached the passenger side of appellant's vehicle, where her son Raymond Farr was seated. The younger Flint testified that Raymond Farr kicked at him through the car window, succeeding only in breaking the window. Raymond Farr then exited the vehicle, and a struggle began between Raymond Farr and Cody Flint.

Next, the parents, Charles Flint and appellant, got into the act, exercising no better judgment than children, their own children actually. Appellant began shoving Charles Flint. At about this same time, Raymond Farr retrieved a tire iron from his mother's car while fighting with Cody Flint. Then, both Charles Flint and appellant approached Raymond Farr and Cody Flint and began struggling over the tire iron, with appellant swearing at Charles Flint all the while. Appellant eventually gained control of the tire iron and began swinging it at Charles Flint. He deflected the blows from the weapon with his right arm, receiving cuts in doing so. The elder Flint then grabbed the tire iron from appellant and threw it in the back of his truck. The two boys stopped fighting, and both Flints drove away from the scene. During trial, Charles Flint testified that although he did not intend to start a fight, he admitted that the fight probably would not have happened if he had not followed and stopped appellant's vehicle. The same was not true of Cody Flint and Raymond Farr. They were ready to fight when the Farr vehicle was cut off.

The Overton Police Department and the Dawson County sheriff's office were eventually dispatched to respond to this incident. Deputy Sheriff Nancy Vandenberg testified that she had tried to discuss what had happened with appellant, but was generally unsuccessful because appellant appeared to be intoxicated, refused to listen to the deputy, interrupted her, and refused to "calm down."

This same deputy interviewed the elder Flint, the victim herein, that same night. She discussed the incident with him and noted that he did not appear intoxicated, that he cooperated with the deputy, and that he allowed her to photograph the

injuries to his arm.

Appellant's witnesses painted the picture quite differently, asserting it was Cody Flint who was driving erratically on the Interstate that night. Further, appellant testified that in fact she had exited her vehicle on the ramp that night, but stated that her purpose was only to advise him about his driving. The defense also alleged that Cody Flint first injected the tire iron into the fracas and that he, not Raymond Farr, broke the passenger window of the Farr vehicle. Raymond Farr also testified that Charles Flint approached appellant with the tire iron and that a struggle followed between Charles Flint and appellant.

The jury generally decided the facts in favor of the State and against appellant.

## SUFFICIENCY OF EVIDENCE

The first assignment of error that we will consider is that of the sufficiency of the evidence.

On a claim of insufficiency of evidence, an appellate court will not set aside a guilty verdict in a criminal case where such verdict is supported by relevant evidence. Only where evidence lacks sufficient probative force as a matter of law may an appellate court set aside a guilty verdict as unsupported by evidence beyond a reasonable doubt. *State v. Williams*, 239 Neb. 985, 480 N.W.2d 390 (1992).

In determining the sufficiency of the evidence to support a finding of guilt in a criminal case, an appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, determine the plausibility of explanations, or weigh the evidence. Those matters are for the finder of fact, whose findings must be sustained if, taking the view most favorable to the State, there is sufficient evidence to support them. *State v. Smith*, 240 Neb. 97, 480 N.W.2d 705 (1992).

Taking the view most favorable to the State, the jury could well have determined that appellant, in fact, did begin to shove Charles Flint when her son and Cody Flint fought. Further, the jury obviously accepted the State's version of the facts and found that after Raymond Farr, his mother, and Charles Flint struggled over the tire iron introduced by Raymond Farr, appellant had the weapon and caused the injuries to Charles

Flint's arm, which injuries the deputy subsequently photographed. It is also quite plausible that since the elder Flint had pulled appellant's car over, the average, reasonable juror could conclude that both Flints consented to a fight. Trying to make sense of this needless altercation is futile. However, the jury certainly had sufficient and relevant evidence upon which to base a guilty verdict of third degree assault having been entered into by mutual consent. This assignment of error is without merit.

## EVIDENTIARY RULINGS

The second assignment of error concerns certain testimony by Cody Flint. A visit to the bill of exceptions will be helpful to explain this assigned error.

Q- [Prosecutor] Did anything unusual happen when you left the truck stop?

A- [Cody Flint] Yeah. As I left the truck stop there was — I assumed maybe it was Brenda Farr's husband and three other guys accosted me as I walked out of the truck stop.

[Defense Counsel]: I'll object, Your Honor. It's not relevant to the charge.

THE COURT: Sustained on the assumption. Overruled as to relevancy.

In the argument section of appellant's brief, relating to this assigned error, appellant states, "Importantly the Court failed to advise the jury that they should not consider what Cody Flint assumed." Brief for appellant at 11. The assignments of error section of appellant's brief states, "The trial court erred in failing to sustain defendant-appellant's objection to certain irrelevant testimony which was prejudicial to the defendant-appellant." We interpret this assignment to mean (1) that the court was required to admonish the jury to disregard the testimony of Cody Flint that he assumed one of the men at the truckstop was appellant's husband, evidence which had been objected to and sustained, despite there being no motion to strike made or cautionary instruction proffered and (2) that all particular testimony regarding Cody Flint being attacked at the truckstop, which included the above question and answer

and others, which were all objected to, was irrelevant and should not have been admitted.

Regarding part (1) of this assignment of error, neither appellant nor the State has provided any authority bearing on this peculiar legal and factual situation. A review of Nebraska case law also fails to turn up any case which is factually on point.

If the court in sustaining an objection to a question has not directed the jury not to consider the reply given, a motion to strike is essential to the proper elimination of the reply from the trial record. 75 Am. Jur. 2d *Trial* § 461 (1991).

In *State v. Harper*, 51 N.C. App. 493, 495-96, 277 S.E.2d 72, 74 (1981), an analogous situation to ours occurred. In that criminal case reviewed by the North Carolina Court of Appeals, the following trial dialog took place:

Q. Now, Mr. Woodfork, prior to the third of April, had someone talked to you about some speakers?

MR. SLEDGE: Objection.

THE WITNESS: There was a lady at the First Baptist Church that said she was missing some speakers.

MR. SLEDGE: Objection.

MR. BESWICK: Your Honor, may we approach the bench?

THE COURT: Yes. (A bench conference was held without the hearing of the court reporter or the jury.)

THE COURT: Sustained.

BY MR. BESWICK: Mr. Woodfork, you say prior to the third of April you had a conversation with some lady; is that right?

A. Yes, sir.

Q. What was her name?

A. Carolyn Hickman.

MR. SLEDGE: Objection.

THE COURT: Overruled.

BY MR. BESWICK: Carolyn what?

A. Hickman. I told Harper I was interested in them. Then I told him I would be back in a few minutes. I left and went to the First Baptist Church. I asked Carolyn Hickman if she had a picture of the speakers. She said yes,

and showed me the picture. Then she called Capt. McConnell (of the New Bern Police Department).

The North Carolina court stated that "[m]oreover, with respect to the first and second 'objections' noted above, no motions to strike were made and no cautionary instructions were sought. Since the trial court sustained the objections to the testimony, the defendant has no further grounds to complain." 51 N.C. App. at 497, 277 S.E.2d at 74.

This language would also apply to the case before us. Appellant objected on the grounds of relevancy, but the trial court overruled the objection on that ground and "[s]ustained [it] on the assumption."

Appellant made no motion to strike the above answer at the time of the testimony, nor did she submit a written instruction requesting the court to admonish the jury specifically concerning these remarks in its instructions.

The trial court in the case before us did what it was requested to do. It sustained the objection because the answer to the prosecutor's question assumed facts of which Cody Flint had no personal knowledge. Since no motion to strike was made and no cautionary instructions were sought, appellant has no further grounds to complain.

Regarding part (2) of this assignment of error, appellant asserts that this entire line of testimony was irrelevant because it had no probative value with respect to the criminal charges in this case. The attack on Cody Flint at the truckstop was relevant. This testimony would bear on the state of mind of Cody Flint later in the evening in the fracas with the Farrs. Since he assumed that appellant's husband was one of his attackers, it would support the notion that the fight was in fact by mutual consent, thus benefiting appellant to the extent that she would not be convicted of "straight" third degree assault, a Class I misdemeanor. See § 28-310(2). This statement should not be interpreted for any other proposition of law except that when there is a factual question concerning a charge of third degree assault by mutual consent and the state of mind of the "victim" is an issue, such testimony is then relevant.

In proceedings where the Nebraska Evidence Rules apply, admissibility of evidence is controlled by the Nebraska

Evidence Rules, except in those instances in which judicial discretion is a factor involved in the admissibility of evidence. *State v. Messersmith*, 238 Neb. 924, 473 N.W.2d 83 (1991).

The relevancy of offered evidence involves the discretion of the trial court. *Id.* Therefore, the trial court's ruling on the relevance of evidence will not be disturbed on appeal unless there has been an abuse of discretion. *State v. Reynolds*, 235 Neb. 662, 457 N.W.2d 405 (1990).

The trial court did not abuse its discretion. Appellant's second assignment of error is without merit.

## SENTENCE

A third degree assault stemming from a fight entered into by mutual consent is a Class II misdemeanor. § 28-310(2). A Class II misdemeanor is punishable by maximum penalties of 6 months' imprisonment, a $1,000 fine, or both. Neb. Rev. Stat. § 28-106 (Reissue 1989). Appellant points out that Charles Flint and Cody Flint did not receive sentences that included any jail time. It must be noted that the record reflects that the Flints were each convicted of disturbing the peace, a Class III misdemeanor, see Neb. Rev. Stat. § 28-1322 (Reissue 1989). A Class III misdemeanor is punishable by maximum penalties of 3 months' incarceration, a $500 fine, or both. § 28-106. There is no constitutional, statutory, or common-law right that a participant in a mutual fight receive the same sentence as the mutual combatant, especially as here, since this situation involves convictions for different crimes. There may be a number of reasons why the parties in this case received different sentences. We are also mindful of the two guiding principles with respect to appellate courts reviewing sentences imposed by the trial courts.

The first principle is that an order imposing a sentence within the statutorily prescribed limits will not be disturbed on appeal absent an abuse of discretion. *State v. Wounded Arrow*, 240 Neb. 44, 480 N.W.2d 205 (1992).

The second principle is that the punishment for a criminal act should be commensurate with the offense. *Id.*

It would appear that appellant did in fact strike Charles Flint with a tire iron. This is established by both testimony and

photographic evidence. Fortunately, Charles Flint was not hurt any worse than he was. This sentence is well within the statutorily prescribed limits. We find no abuse of discretion on the trial court's part. This assignment of error is also without merit.

The decision of the lower court is affirmed in all regards.

AFFIRMED.