STATE OF NEBRASKA, APPELLEE, V. RICHARD EDWARD ELLEN,
APPELLANT.

500 N.W.2d 818

Filed May 28, 1993.    No. S-92-933.

Harry A. Moore, Madison County Public Defender, for appellant.

Don Stenberg, Attorney General, and Delores Coe-Barbee for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, FAHRNBRUCH, and LANPHIER, JJ.

LANPHIER, J.

Contending that the sentences imposed by the Madison County District Court are excessive, defendant, Richard Edward Ellen, appeals his sentence of life imprisonment for second degree murder and his consecutive sentence of 5 to 15 years for first degree assault. We affirm.

## BACKGROUND

The events leading to the murder of Lonnie Edwards took place on the evening of July 18, 1989, in Madison, Nebraska. On that night, defendant and several other employees of Mid-American Carnival went into the city of Madison, visiting several bars. At one of these establishments the group encountered other workers from the carnival, including Charlie Tidwell and the victim, Edwards. Edwards offered defendant and his friends a pitcher of beer, which defendant refused. Edwards persisted in his offer, as did defendant in his refusal, which eventually led to an argument in which defendant told Edwards to sit down and quit bothering him. Later that evening, Edwards approached defendant's wife and asked her to dance. When she refused, Edwards insulted her, using an obscenity.

Prior to leaving the bar for the evening, defendant made a comment to Tidwell about killing a "nigger," evidently in reference to Edwards. On the way home, defendant further remarked that he should hit Edwards "in the head and throw him in the river and get rid of him." After returning to the carnival encampment, defendant, Tidwell, and a number of others continued to drink at defendant's trailer. Following further discussion, defendant decided to confront Edwards. He left his trailer, picked up an ax or mallet handle which he used as part of his carnival exhibit, and walked to a nearby bridge, where he saw Edwards. Defendant approached Edwards, whereupon an argument ensued concerning the "incidents" which had taken place earlier that evening. Defendant hit Edwards two or three times with the handle, apparently breaking Edwards' arm. Tidwell may have also struck Edwards with the handle at this time. Either defendant or Tidwell then discarded the handle, and both returned to defendant's trailer.

Arriving at the trailer, defendant and Tidwell removed their bloodied shirts, put them in a bag, and gave the bag to defendant's stepdaughter to discard. When the stepdaughter returned from disposing of the clothes, she informed defendant that Edwards was in the trailer compound telling others that defendant had broken Edwards' arm. An autopsy would later confirm that Edwards' left arm had been broken. After hearing

the stepdaughter's story, defendant and Tidwell went outside, where they located Edwards, and either one or both of them again assaulted Edwards by striking him with their fists. At this point, it was approximately 3 a.m. on July 19.

Edwards was then, either by force or persuasion, placed in a truck by defendant and Tidwell, on the pretense that they would take him to a hospital. Driving with the truck's lights off, defendant proceeded a short distance on a paved road and then turned onto a field access road. Defendant and Tidwell then pulled Edwards out of the truck. After dragging him down a hill, either defendant or Tidwell proceeded to strike Edwards in the head with a 4-foot-long metal bar, bludgeoning him to death. An autopsy indicated that Edwards had sustained intense and severe blows to the head, several of which penetrated his brain, and one of which cut halfway through his brain stem.

After returning to the carnival encampment, defendant fled Madison during the early morning hours of July 19. He eventually arrived in Oregon, where he lived under an alias for nearly 2 years. On June 7, 1991, defendant surrendered to Oregon authorities after seeing himself on the television program "America's Most Wanted." Defendant was arraigned in district court on October 23, on an information charging him with first degree murder. At his arraignment on the information, defendant stood mute. The district judge entered a plea of not guilty for defendant.

A plea agreement was later reached between defendant and the prosecutor, and on July 16, 1992, defendant pled guilty to second degree murder and first degree assault in exchange for the State's dropping the first degree murder charge. Second degree murder is a Class IB felony, Neb. Rev. Stat. § 28-304(2) (Reissue 1989), which carries a maximum penalty of life imprisonment and a minimum penalty of 10 years' imprisonment, Neb. Rev. Stat. § 28-105(1) (Reissue 1985). First degree assault is a Class III felony, Neb. Rev. Stat. § 28-308 (Reissue 1989), which is punishable by a maximum period of 20 years' imprisonment, a $25,000 fine, or both, with a minimum period of 1 year's imprisonment, § 28-105(1). On September 19, 1992, defendant was sentenced to life imprisonment on the

second degree murder charge and 5 to 15 years' imprisonment on the first degree assault charge, with the sentences to run consecutively. Defendant appeals his sentences to this court.

## ASSIGNMENT OF ERROR

Defendant assigns a single error, contending that "[t]he sentences imposed upon [him] are excessive, and the District Court abused its discretion in imposing such sentences."

## STANDARD OF REVIEW

"Except under certain circumstances when the Supreme Court is reviewing a sentence of death, *State v. Reeves*, 239 Neb. 419, 476 N.W.2d 829 (1991), it is not the function of an appellate court to conduct a de novo review of the record to determine whether a sentence is appropriate." *State v. Hall*, 242 Neb. 92, 95, 492 N.W.2d 884, 886 (1992). We have long adhered to the doctrine that to the trial court and not to an appellate court is entrusted the power to impose sentences for the commission of crimes against the State, and the judgments of that court cannot be controlled or interfered with in the absence of an abuse of discretion. See, *State v. Hall, supra*; *Wright v. State*, 45 Neb. 44, 63 N.W. 147 (1895). We have also declared that "[a] sentence imposed within the statutory limits will not be disturbed on appeal in the absence of an abuse of discretion by the trial court." *State v. Coleman*, 241 Neb. 731, 733, 490 N.W.2d 222, 224 (1992). See, also, Neb. Rev. Stat. § 29-2308 (Supp. 1991). With these maxims in mind, we turn to our review of defendant's sentences.

## THE SENTENCES

Defendant argues that the sentences imposed by the district court "are excessive, and are an abuse of discretion by the district court; a sentence of 10 years should have been imposed on Count I [second degree murder], and a sentence of one year should have been imposed on Count II [first degree assault]." Brief for appellant at 13. Defendant bases this argument almost exclusively on a claim that on the night in question, he was acting under the "extreme influence of alcohol." *Id*. At no point, however, does he contend that he was unaware of what he was doing due to his use of alcohol or that his intoxication

prevented him from having the requisite mens rea for the offenses to which he pled guilty. The defendant merely concludes that his intoxication "should have been considered by the sentencing court as a factor in strong mitigation of his punishment." *Id*. We disagree.

In *State v. Gamron*, 186 Neb. 249, 251, 182 N.W.2d 425, 427 (1970), this court held: "Where one deliberately pursues a course to voluntarily become intoxicated, as here, particularly where defendant was fully aware of his propensity to violate the law when drunk, there is little that can be said in his behalf in mitigation of the crime or the punishment." In the instant case, the record shows that defendant perceives himself as having an alcohol problem. He also acknowledges that he is inclined to become abusive when he drinks too much. Nevertheless, the evidence shows that defendant had been drinking throughout the day on July 18, 1989, and that he continued doing so until the early morning hours of July 19, when the murder of Edwards occurred. As this court further stated in *Gamron*, "The lives and property of the public are entitled to protection against the criminal conduct of those who become voluntarily intoxicated." *Id*. See, also, *State v. Turner*, 221 Neb. 852, 381 N.W.2d 149 (1986) (defendant's intoxication apparently regarded as an aggravating condition rather than a mitigating one). Therefore, while we do not hold that intoxication can never be considered a mitigating circumstance, we find defendant's contention that his drinking be considered such in the present case unpersuasive.

In determining an appropriate sentence, the district court conducted an extensive sentencing hearing, which generated some 221 pages of material. In addition, pursuant to Neb. Rev. Stat. § 29-2261 (Reissue 1989), a presentence report containing 87 pages of information was prepared by the Nebraska Probation System and delivered to the court. The presentence report indicated that defendant had numerous police contacts dating back to 1972, including arrests for loitering, resisting arrest, and theft of services, as well as three arrests for driving while intoxicated and numerous arrests for public intoxication. Further, defendant's military service record indicated that while he was in the U.S. Marine Corps, he was court-martialed twice

for breaking restrictions, theft, and being absent without leave. Defendant spent 4 months in the Portsmouth Naval Prison for these infractions before receiving an undesirable discharge in 1970. These myriad offenses, while generally petty and nonviolent in nature, nonetheless constitute a history of criminal activity, a circumstance which may be considered by a sentencing court. See *State v. Smith*, 240 Neb. 97, 480 N.W.2d 705 (1992).

In imposing a sentence, a sentencing judge should consider the defendant's age, mentality, education, experience, and social and cultural background, as well as his or her past criminal record or law-abiding conduct, motivation for the offense, nature of the offense, and the amount of violence involved in the commission of the crime. *Id*. From the facts and circumstances of this case, the district court determined that the complained-of sentences were appropriate, finding that "a lesser sentence would depreciate the seriousness of the offense and promote disrespect for the law." Had defendant been convicted of the original charges brought against him, and had he been given the maximum sentence, he would have faced the death penalty. See, Neb. Rev. Stat. § 28-303 (Reissue 1989); § 28-105(1). Due to his plea bargain, defendant has thus already received a substantially reduced penalty by escaping the possibility of being sentenced to death.

## CONCLUSION

Defendant's sentences were clearly within the statutory limits of the penalties for the crimes to which he pled guilty. The sentences are not excessive and do not constitute an abuse of discretion by the trial court, which determined that defendant's cruel, violent, brutal, and senseless acts "deserve the most serious of consequences." Accordingly, the sentences imposed by the district court are affirmed. The motions filed by defendant after submission of this appeal are overruled as moot.

AFFIRMED.