STATE OF NEBRASKA, APPELLEE, v. TERRY L. BENNETT, APPELLANT.

508 N.W.2d 294

Filed November 9, 1993.   No. A-92-476.

Deborah D. Cunningham for appellant.

Don Stenberg, Attorney General, and Marilyn B. Hutchinson for appellee.

CONNOLLY, IRWIN, and WRIGHT, Judges.

Wright, Judge.

Terry L. Bennett appeals his convictions for robbery and assault in the first degree. He was sentenced to concurrent terms of 16²/₃ to 20 years for the robbery and 6²/₃ to 20 years for the assault. The sentences required that each year Bennett be placed in solitary confinement from July 28 to August 8.

Bennett contends that the district court erred in granting the State's motion in limine excluding certain testimony and that the sentences are excessive and unconstitutionally cruel and unusual.

## SCOPE OF REVIEW

■ Error may not be predicated upon a ruling of a trial court excluding testimony of a witness unless the substance of the evidence to be offered by the testimony was made known to the trial judge by offer or was apparent from the context in which the questions were asked. *State v. Cortis*, 237 Neb. 97, 465 N.W.2d 132 (1991).

■ A sentence within statutory limits will not be disturbed upon appeal absent an abuse of discretion. *State v. Ellen*, 243 Neb. 522, 500 N.W.2d 818 (1993); *State v. Philipps*, 242 Neb. 894, 496 N.W.2d 874 (1993); *State v. Riley*, 242 Neb. 887, 497 N.W.2d 23 (1993); *State v. Reynolds*, 242 Neb. 874, 496 N.W.2d 872 (1993).

## FACTS

On Sunday, July 28, 1991, the victim, Janis Erichsen, drove to her neighborhood supermarket, where she locked her car before buying groceries. When she came out with her cart of groceries, she placed them in her car, locked it, and returned the cart to the store. As she returned to her car, she noticed a man walking directly toward her. Because he was the only person nearby in the parking lot, she became uncomfortable and tried to quickly unlock her car. The man approached her, sprayed her face with Mace, grabbed her purse, and walked toward a Ford Escort, which was parked at the edge of the parking lot with a young woman standing behind it.

Erichsen went to the Escort and reached into the car in an attempt to recover her purse, which was between the front seats of the car. She was again sprayed with Mace and became

entangled in the seatbelt strap. At trial, she said she remembered hearing the car start, but nothing afterward, and then she awoke in an intensive care unit of a hospital.

Chris Humphrey testified that his attention was attracted to the car when he saw a body dangling from the driver's side of the car as it sped through a residential area. He chased the Escort in his car. Humphrey called out his window for someone to call the police. He said the car he was chasing reached speeds of up to 50 m.p.h. and ran through stop signs. At one point, the Escort turned a wide corner, and Humphrey was able to get ahead of it to block the street. The Escort stopped long enough to turn around, but no one tried to exit the vehicle or to release Erichsen from the car.

Tim Tompkins testified that he was working in his driveway when he noticed two vehicles race past him. He saw what he perceived to be a dummy hanging from the side of the first car, a Ford Escort. The driver of the second car was honking the horn and yelling for someone to call the police. Tompkins got in his mother's car and followed a trail of blood marks in the street, but he lost sight of the Escort. He continued following the trail of blood for about a mile and found Erichsen lying in the middle of the street. The trail of blood was at least 1.6 miles long. The shortest distance from the supermarket where the initial purse-snatching incident occurred to the spot where Erichsen was dropped was half a mile.

Erichsen was taken to the hospital, where a breathing tube was inserted because she was suffering from respiratory arrest caused by her body being suspended with no support from her feet. She underwent 12 to 13 surgeries, including surgery "just about" each of the first 9 days. She remained in the hospital for approximately 2 months. She sustained an abrasion on her abdomen and bruises in the center of her chest and on her left arm. The four fingers on her left hand were black and blue. She had a contusion on her right arm and an abrasion on her right forearm. Both legs from the thighs down to below her knees had been severely abraded, and both kneecaps were exposed. On the left leg, there was a severe, deep black burn that extended from the left hip to the exposed kneecap, and a severe burn ran from the front of the left knee to her toes. Another

burn extended from the right hip to halfway down the shin. The friction burns, caused by sliding along asphalt, blackened the skin.

Erichsen testified that she "lost both of [her] kneecaps" and a large amount of skin from her legs. She incurred numerous infections and required numerous surgeries. By the time of the trial, she could walk unassisted with a cane, but continued to have problems going up and down stairs. Her left knee did not bend. She had trouble lifting her left leg to get into a bathtub. She was unable to drive and could no longer work as a medical secretary for a psychiatrist, a position she held for 28 years. She identified Bennett as her assailant.

Bennett was found guilty and sentenced to concurrent terms of $16^2/_3$ to 20 years for the robbery and $6^2/_3$ to 20 years for the assault. The court ordered that Bennett be placed in solitary confinement beginning at 6:51 p.m. on the anniversary date of the crime, July 28, through 3:45 p.m. on August 8 of each year. The court stated that the solitary confinement was intended to remind Bennett of the terrible ordeal that his crime victim is enduring.

## ANALYSIS

Bennett assigns as error the granting of the State's motion in limine to exclude certain statements made by Natalie Church to Det. James Reuting. During the investigation, Reuting interviewed Church on several occasions after the Ford Escort, which was owned by Church's mother, had been located. Church was not called as a witness. Defense counsel cross-examined Reuting about his questioning of Church. The State contended that defense counsel was attempting to elicit hearsay statements made to Reuting by Church in an attempt to admit the statements without calling Church as a witness. When the court sustained the State's motion to restrict the defense's questions, defense counsel made no offer of proof.

Bennett now argues that he sought to solicit testimony which would show that Reuting did not believe statements made by Church. Bennett suggests that the testimony would rebut the detective's motives and therefore is not hearsay.

"Hearsay is a statement, other than one made by the

declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Neb. Rev. Stat. § 27-801(3) (Reissue 1989). Since we can only speculate as to the evidence Bennett sought to elicit from Reuting, we cannot determine whether the statement would have been admissible.

> Error may not be predicated upon a ruling of a trial court excluding testimony of a witness unless the substance of the evidence to be offered by the testimony was made known to the trial judge by offer or was apparent from the context within which the questions were asked.

*State v. Cortis*, 237 Neb. 97, 109, 465 N.W.2d 132, 141 (1991). See, also, Neb. Rev. Stat. § 27-103 (Reissue 1989).

The offer of proof brings the substance of the evidence before the trial court and the appellate court so that both may determine whether the refusal to accept the evidence was error. An offer of proof is not necessary if the record and the form of the question show that the offered evidence is relevant and competent. *State v. Kramer*, 238 Neb. 252, 469 N.W.2d 785 (1991). Since the record here does not provide us with information as to the testimony which defense counsel planned to introduce, we have no record to consider in determining whether the court erred in sustaining the objection to the testimony. This assignment of error fails because defense counsel failed to preserve the evidence for our consideration on appeal.

Bennett contends that the sentence is excessive and that the condition which requires his placement in solitary confinement for 12 days each year is unconstitutionally cruel and unusual. Robbery is a felony which carries a minimum sentence of 1 year in prison and a maximum sentence of 50 years' imprisonment. Neb. Rev. Stat. § 28-105(1) (Reissue 1989). First degree assault is a Class III felony which has a minimum sentence of 1 year in prison and a maximum sentence of 20 years' imprisonment. § 28-105(1). A sentence within statutory limits will not be disturbed upon appeal absent an abuse of discretion. *State v. Ellen*, 243 Neb. 522, 500 N.W.2d 818 (1993); *State v. Philipps*, 242 Neb. 894, 496 N.W.2d 874 (1993); *State v. Riley*, 242 Neb. 887, 497 N.W.2d 23 (1993); *State v. Reynolds*, 242 Neb. 874,

496 N.W.2d 872 (1993).

The seriousness of the offense and the amount of violence used in the commission of the crime are important factors in determining the appropriateness of a sentence. *State v. Wounded Arrow*, 240 Neb. 44, 480 N.W.2d 205 (1992). There is no question that these are serious crimes and that the violence involved caused the victim untold pain and suffering. The senseless nature of these crimes leads us to find it nearly inconceivable that Bennett would claim that the sentences are excessive. Similar to the cowboy who was dragged behind the horse over rocks and cactus, the helpless victim was dragged by an automobile over concrete and asphalt. We find no abuse of discretion in the sentences imposed by the district court.

We address Bennett's argument that the court abused its discretion by sentencing him to serve the period from July 28 to August 8 of each year in solitary confinement. We find that at the time of sentencing, the trial court did not abuse its discretion in entering such an order.

Bennett does not argue that the statute which provided for solitary confinement is unconstitutional. We therefore consider whether the punishment was cruel and unusual, in violation of the Constitution of the State of Nebraska and the Eighth Amendment to the U.S. Constitution. In *State v. Stratton*, 220 Neb. 854, 374 N.W.2d 31 (1985), a defendant convicted of murder was required to spend 2 days per year in solitary confinement, the defendant's birthday and the anniversary of the victim's death. In the present case, the 12 days of solitary confinement begin each year at 6:51 p.m. on July 28, which is the date the robbery occurred, and end on August 8 of each year at 3:45 p.m., which confinement the court stated was intended to remind Bennett of the terrible ordeal his crimes had caused the victim to endure. Regardless of the severity, a sentence of imprisonment which is within the limits of a valid statute ordinarily is not cruel and unusual punishment in a constitutional sense. *State v. Leadinghorse*, 192 Neb. 485, 222 N.W.2d 573 (1974).

One of the factors to be used in determining whether solitary confinement should be ordered under both state and federal Constitutions is the gravity of the offense in comparison with

the harshness of the penalty. *State v. Stratton, supra.* In imposing Bennett's sentences, the trial court found that the crime victim would live each day of her life with not only the memory, but the physical and emotional hurt that the crimes created for her. The court could not recall a case where any more violent acts were perpetrated on a human being than those inflicted on this victim.

Judicial abuse of discretion means that the reasons or rulings of the trial judge are clearly untenable, unfairly depriving a litigant of a substantial right and denying a just result in matters submitted for disposition. *State v. Riley,* 242 Neb. 887, 497 N.W.2d 23 (1993). We find these sentences do not reflect an abuse of the trial court's discretion.

Neb. Rev. Stat. § 29-2204(1) (Reissue 1989) was amended by the Legislature effective September 1993. Approved by the Governor on May 4, 1993 Neb. Laws, L.B. 529, deleted the portion of § 29-2204 that provided: "[T]he court . . . shall determine and declare in its sentence whether any such convict shall be kept in solitary confinement . . . and . . . for what period of time."

■ Bennett argues that due to this amendment of the statute, the portion of the sentences mandating the annual 12 days in solitary confinement should be vacated. Bennett relies upon *State v. Randolph,* 186 Neb. 297, 301-02, 183 N.W.2d 225, 228 (1971), *cert. denied* 403 U.S. 909, 91 S. Ct. 2217, 29 L. Ed. 2d 686, in which the court held that "where a criminal statute is amended by mitigating the punishment, after the commission of a prohibited act but before final judgment, the punishment is that provided by the amendatory act unless the Legislature has specifically provided otherwise." We note that Bennett's sentences are not final, due to the pending appeal.

Therefore, we must consider whether the amendment to § 29-2204 mitigated the punishment such that we are required to modify the sentences by eliminating the provision for solitary confinement. If solitary confinement is a part of the punishment, then we are required to modify the sentences. If such confinement is merely the manner in which the incarceration is to be served, then we are not required to modify the sentences, unless we find an abuse of discretion. In

considering the trial court's explanation for the solitary confinement, we find that in this case, such confinement was intended as a form of punishment. The statute as amended contains no provision for the imposition of solitary confinement as a part of a sentence. We therefore modify the judgment of the district court to eliminate the provision for solitary confinement. We affirm the judgment in all other respects.

AFFIRMED AS MODIFIED.