IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

STATE V. DUNBAR

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLANT AND CROSS-APPELLEE,

V.

LEE E. DUNBAR, APPELLEE AND CROSS-APPELLANT.

Filed July 2, 2019.    Nos. A-18-322 through A-18-324.

Appeal from the District Court for Douglas County: MARLON A. POLK, Judge. Affirmed.

Donald W. Kleine, Douglas County Attorney, and Beth Beninato for appellant.

Douglas J. Peterson, Attorney General, and Erin R. Tangeman for appellant.

Thomas C. Riley, Douglas County Public Defender, and Natalie M. Andrews for appellee.

MOORE, Chief Judge, and PIRTLE and ARTERBURN, Judges.

PIRTLE, Judge.

## INTRODUCTION

The State appeals and Lee E. Dunbar cross-appeals from individual orders in three separate cases that were consolidated for trial in the district court for Douglas County. In each case, Dunbar was charged and convicted of at least one sexual assault of a child in the first degree. The State argues that the sentences imposed are excessively lenient and should be modified. Dunbar argues that the court erred in consolidating the cases into a single trial and that the court erred in failing to grant his motion for mistrial on the basis of prosecutorial misconduct. For the reasons that follow, we affirm.

- 1 -

BACKGROUND

On January 19, 2017, the State filed an information charging Dunbar with three separate counts of sexual assault on a child in the first degree, pursuant to Neb. Rev. Stat. § 28-319.01(1)(a) (Reissue 2016), related to A.C. and was numbered CR 17-196. After a subsequent investigation, three additional informations were filed. The State filed an information charging Dunbar with one count of sexual assault on a child in the third degree related to R.B. and was numbered CR 17-215. On April 26, 2017, the State filed an information charging Dunbar with one count of sexual assault on a child in the first degree, pursuant to § 28-319.01(1)(a), related to A.K. and was numbered CR 17-1313. Also on April 26, 2017, the State filed an information charging Dunbar with one count of sexual assault on a child in the first degree, pursuant to § 28-319.01(1)(a), related to T.B. and was numbered CR 17-1312. The court, on motion of the State, consolidated all four cases for trial.

A.K. and A.C. are sisters that Dunbar and his wife, Victoria, were fostering at the time of abuse. T.B. and R.B. are related to Dunbar.

The first alleged assault occurred on T.B. She testified that, when she was 6 or 7 years old, she was going to the Dunbar residence while her grandmother was at work. T.B. further testified that during at least one of these stays Dunbar touched her private part with his fingertips on both the outside and inside. She testified that she believed this happened more than one time. T.B. testified that these incidents occurred in a bed in "Aunt Vickie's room" with only Dunbar present. These occurred from June 2008 through June 2011. Although she did not tell her grandmother about this incident, at some point she expressed that she no longer wished to go to the Dunbar's home.

A.K. was the victim of the second alleged assault. A.K. was 9 or 10 years old while living at the Dunbar's home. She testified that Dunbar would touch her private part although, she could not recall whether this was over her clothes or underneath, and could not recall how often it occurred. She further testified that Dunbar made her touch his private part and that he had put his private part in her mouth. A.K. testified that Dunbar would bring her, A.C., R.B., and other children into his bedroom to watch movies. She further testified that the touching occurred in the bedroom. These instances occurred in April 2014 through December 2015.

A.C. was the victim of the third alleged assault. A.C. was 8 years old when she came to live with Dunbar. A.C. testified that Dunbar touched her private part and bottom. She testified that this touching would occur with his hand, which would go inside of her private part. A.C. stated that each type of touching occurred on more than one occasion. She further testified that Dunbar would touch her private parts with his mouth. A.C. stated that Dunbar would make her touch his private part and put his private part in her mouth. She testified that the touching occurred in Dunbar's bedroom, often while watching movies, sometimes with A.K. and other children present. The abuse occurred starting in April 2014 through December 2015.

R.B. was the victim of the fourth alleged assault. R.B. testified that on one occasion she fell asleep in Dunbar's bed after watching movies and awoke with Dunbar's face between her legs, but in such a way that he was not physically touching her. She stated that her clothes were on the same way when she woke up as when she fell asleep. The alleged actions took place between May

2016 and January 2017. The court entered a judgment of acquittal as to this charge at the close of the State's case.

At the conclusion of the jury trial, Dunbar was convicted of the five remaining counts in the three remaining cases. He was sentenced to the statutory minimum for each of the charges and the court ordered the sentences to run concurrently. It is from these orders that the State and Dunbar appeal.

## ASSIGNMENTS OF ERROR

On appeal, the State assigns that the district court abused its discretion by imposing an excessively lenient sentence.

On cross-appeal, Dunbar assigns that the district court abused its discretion in (1) failing to grant a mistrial as a result of prosecutorial misconduct and (2) consolidating the four separate cases into one for trial.

## STANDARD OF REVIEW

Whether an appellate court is reviewing a sentence for its leniency or its excessiveness, a sentence imposed by a district court that is within the statutorily prescribed limits will not be disturbed on appeal unless there appears to be an abuse of the trial court's discretion. *State v. Parminter*, 283 Neb. 754, 811 N.W.2d 694 (2012). A judicial abuse of discretion exists only when the reasons or rulings of a trial judge are clearly untenable, unfairly depriving a litigant of a substantial right, and denying a just result in matters submitted for disposition. *Id.*

Whether to grant a mistrial is within the trial court's discretion, and we will not disturb its ruling unless the court abused its discretion. *State v. Swindle*, 300 Neb. 734, 915 N.W.2d 795 (2018).

A trial court's ruling on a motion for consolidation of prosecutions properly joinable will not be disturbed on appeal absent an abuse of discretion. *State v. Perry*, 268 Neb. 179, 681 N.W.2d 729 (2004).

## ANALYSIS

*Consolidation of Cases.*

Dunbar alleges that the court abused its discretion in consolidating the four separate cases into one for trial. The joinder or separation of the charges for trial is governed by the principles of Neb. Rev. Stat. § 29-2002 (Reissue 2016), which states:

(1) Two or more offenses may be charged in the same indictment, information, or complaint in a separate count for each offense if the offenses charged, whether felonies or misdemeanors, or both, are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan.

(2) The court may order two or more indictments, informations, or complaints, or any combination thereof, to be tried together if the offenses could have been joined in a single indictment, information, or complaint or if the defendants, if there is more than one, are alleged to have participated in the same act or transaction or in the same series of acts

or transactions constituting an offense or offenses. The procedure shall be the same as if the prosecution were under such single indictment, information, or complaint.

(3) If it appears that a defendant or the state would be prejudiced by a joinder of offenses in an indictment, information, or complaint or by such joinder of offenses in separate indictments, informations, or complaints for trial together, the court may order an election for separate trials of counts, indictments, informations, or complaints, grant a severance of defendants, or provide whatever other relief justice requires.

In addition, a defendant is not considered prejudiced by a joinder where the evidence relating to both offenses would be admissible in a trial of either offense separately. *State v. Schroeder*, 279 Neb. 199, 777 N.W.2d 793 (2010).

Under § 29-2002, whether offenses were properly joined involves a two-stage analysis in which we first determine whether the offenses were related and joinable and then determine whether an otherwise proper joinder was prejudicial to the defendant. *State v. Knutson*, 288 Neb. 823, 852 N.W.2d 307 (2014). We examine the informations and the facts underlying the charges. *Id.*

The first question is whether the charges were related and properly joinable. With regard to the charges related to A.C., A.K., and T.B., these were each alleged to be violations of § 28-319.01(1)(a), first degree sexual assault of a child, while the charge related to R.B. was alleged to be a violation of Neb. Rev. Stat. § 28-320.01 (Reissue 2016), third degree sexual assault of a child. Dunbar argues that as this alleged abuse was spread out over a period of time from 2008 through 2017, with only the charges regarding A.C. and A.K. overlapping, and because the charges involving R.B. are under a different statute that the offenses were not properly joinable. While the timing of the alleged crimes and whether they were charged under the same statute are two of the factors which are applicable in determining whether charges are of the same or similar character for the purposes of joinder, they are not the only factors. See *State v. Knutson, supra*. See, also, *State v. Freeman*, 253 Neb. 385, 571 N.W.2d 276 (1997). The Nebraska Supreme Court has specifically held that all the charges need not fall under the same statute to be properly joined. See *State v. Knutson, supra*. Rather, we must examine the underlying factual circumstances of the charges to determine how similar they are. In this case, each of the alleged assaults occurred in a similar manner, in Dunbar's bedroom, with young girls of a similar age, Dunbar occupied a similar position of trust as a father or uncle figure for each of the girls, and each involved alleged sexual conduct with a child. As such, we find that the charges were of the same or similar character and joinable under § 29-2002(1).

The second question is whether the otherwise proper joinder prejudiced Dunbar. A defendant opposing joinder of charges has the burden of proving prejudice. *State v. Garza*, 256 Neb. 752, 592 N.W.2d 485 (1999). To prevail, a defendant "'must show "compelling specific, and actual prejudice from [the] court's refusal to grant the motion to sever."'" *State v. Foster*, 286 Neb. 826, 837, 839 N.W.2d 783, 795 (2013), quoting *U.S. v. Driver*, 535 F.3d 424 (6th Cir. 2008). That is, "'a defendant must show that the joint trial caused him such compelling prejudice that he was deprived of a fair trial.'" *State v. Foster, supra*, 286 Neb. at 837, 839 N.W.2d at 795, quoting *U.S. v. Hill*, 643 F.3d 807 (11th Cir. 2011). These standards have been applied to cases involving the issue of joinder of charges. See *State v. Knutson, supra*. The Supreme Court has previously

held that prejudice is not shown if evidence of one charge would have been admissible in a separate trial of another charge. *Id.* In addition, no prejudice from joined charges usually occurs if the evidence is sufficiently simple and distinct for the jury to easily separate evidence of the charges during deliberations. *Id.*

In this case, we need not address whether evidence of one of the charges would have been admissible in a separate trial of another charge. Rather, the evidence is sufficiently simple and distinct for the jury to easily separate the charges. Each of the alleged charges occurred during distinct time periods and included distinguishing characteristics between the girls, such as their relationship to Dunbar, and the specific nature of the alleged sexual abuse inflicted on each one. As such, there could be no prejudice against Dunbar in the joinder of these charges and, therefore, the district court did not abuse its discretion in joining the charges.

*Prosecutorial Misconduct and Motion for Mistrial.*

Dunbar alleges that the court abused its discretion in failing to grant his motion for mistrial on the basis of alleged prosecutorial conduct. He alleges two specific instances of prosecutorial misconduct, both of which occurred in the State's closing arguments. First, he alleges that it was improper for the State to assert that the "presumption of innocence is gone" and that the "presumption of innocence has shifted. . . ." Second, he alleges that it was improper for the State to refer to the fourth alleged victim, R.B., in its closing argument as he had been acquitted by the court of that charge.

Generally, in assessing allegations of prosecutorial misconduct in closing arguments, a court first determines whether the prosecutor's remarks were improper. *State v. Alarcon-Chavez*, 284 Neb. 322, 821 N.W.2d 359 (2012). A prosecutor's conduct that does not mislead and unduly influence the jury does not constitute misconduct. *Id.* It is then necessary to determine the extent to which the improper remarks had a prejudicial effect on the defendant's right to a fair trial. *Id.*

In this case, the first of the alleged prejudicial statements was made during the initial closing arguments of the State after the jury instructions had been read to the jury. The jury instructions included instruction No. 4 which states, in part, that presumption of innocence means "you must find him not guilty unless and until you decide that the state has proved him guilty beyond a reasonable doubt." During the State's closing argument, the following statement was made: "But that presumption of innocence is gone. It's been gone since [A.C.] testified." Dunbar immediately objected to the statement on the basis that this was an incorrect statement of law. The court overruled the objection noting that it considered the statement argument. Immediately after the objection was overruled, the State continued the closing by stating, "that presumption of innocence has shifted since [A.C.] testified."

The first step is to determine whether the remarks were improper. We find that the statements were improper. When examining statements made by a prosecutor in closing we must look to the entire context of the language to determine if the remarks were improper. See *State v. Gonzales*, 294 Neb. 627, 884 N.W.2d 102 (2016). In the context of the sentence after it, it appears that the State was attempting to indicate that they had met their burden of proof for the charges involving A.C. with her testimony proving them beyond a reasonable doubt. However, we cannot ignore that the first remark is a misstatement of the law. Once a defendant has been afforded a fair trial and convicted of the offense for which the defendant was charged, the presumption of

innocence disappears. *State v. Lotter*, 278 Neb. 466, 771 N.W.2d 551 (2009). As such, the State's remark that the presumption of innocence was gone was an improper remark. See *U.S. v. Crumley*, 528 F.3d 1053 (8th Cir. 2008). Even if the first comment was merely argument, the second comment was a clear misstatement of the law. The presumption of innocence does not shift. See *Roberts v. State*, 110 Neb. 759, 195 N.W. 114 (1923). Further, the idea of a shifting burden has a very specific meaning within the legal context. Thus, in making these remarks, the State made an improper statement of the law. We must next determine to what extent the statements had a prejudicial effect on Dunbar's right to a fair trial.

In making a determination as to the prejudicial effect of improper statements, a court considers (1) the degree to which the prosecutor's conduct or remarks tended to mislead or unduly influence the jury, (2) whether the conduct or remarks were extensive or isolated, (3) whether defense counsel invited the remarks, (4) whether the court provided a curative instruction, and (5) the strength of the evidence supporting the conviction. *State v. McSwine*, 292 Neb. 565, 873 N.W.2d 405 (2016).

We first examine the degree to which the prosecutor's remarks tended to mislead or unduly influence the jury. We find this weighs against finding prejudice. First, the jury had been instructed as to the nature of the presumption of innocence prior to hearing the improper remarks. Absent evidence to the contrary, it is presumed that a jury followed the instructions given in arriving at its verdict. *State v. Smith*, 286 Neb. 856, 839 N.W.2d 333 (2013). Similarly, as these statements occurred during the initial closing statement; Dunbar had an opportunity to restate and correct any misstatements of law. In fact, Dunbar reminded the jury of the jury instructions and told them that they "would make the State carry its burden and never let it shift. . . ."

The second factor examines the extent of the remarks. These comments occurred in only one place within the closing arguments, made immediately after each other. As such, the remarks were relatively isolated and this factor weighs against finding prejudice.

The third factor is whether defense counsel invited the remarks. This factor does not weigh strongly in favor of prejudice or lack thereof as presumption of innocence and the burden of proof is a relevant topic for both the State and Dunbar throughout the trial. However, we note that this occurred in the State's initial closing, and thus it is unlikely that the defense invited such remarks.

The fourth factor is whether the court provided a curative instruction. In this case the court determined that a curative instruction was not necessary after requested in Dunbar's objection. As the remark was improper, a curative instruction should have been provided and the lack of a curative instruction weighs in favor of finding prejudice. At the same time we would note that jury instruction Nos. 5, 6, 7, 8, and 9 which described the elements of the five offenses, all ended with the following sentence: "The burden of proof is always on the State to prove beyond a reasonable doubt all of the material elements of the crime charged, and this burden never shifts." While this is not a curative instruction given immediately after the prosecutor's misstatements, it did serve to decrease the risk of unfair prejudice to the defendant.

Finally, the fifth factor is the strength of the evidence supporting Dunbar's convictions. We find this factor weighs against finding prejudice. Each victim testified to similar patterns of abuse by Dunbar which occurred in the same location under similar circumstances. As such, the evidence was sufficient to find a conviction.

Weighing the entirety of these factors, we conclude the improper remarks were not prejudicial.

The second alleged prejudicial statement was made during the rebuttal closing when the State referred to all four girls as victims and discussed evidence regarding the charges against R.B. Dunbar did not immediately object to this characterization but raised it after closing arguments in a motion for a mistrial. This was denied by the court on the basis that the evidence was adduced, in the record, and thus it was not improper for the jury to be reminded of it in closing.

We find that this remark was not improper. Although Dunbar had been acquitted of the charges involving R.B., Dunbar did not move to have her testimony stricken from the record. As such, it was still evidence that could be considered by the jury and the prosecutor's statement did not mislead or unduly influence the jury.

As we have found that the alleged incidents of prosecutorial misconduct were either not improper or did not prejudice the jury, we find that the district court did not abuse its discretion in denying Dunbar's motion for mistrial.

*Leniency of Sentence Imposed.*

The State argues that the sentence imposed on Dunbar was excessively lenient and should be set aside. Dunbar was sentenced to the mandatory minimum of 15 to 16 years' imprisonment for each of the five counts of sexual assault on a child that he was found guilty of. See § 28-319.01(2). The court ordered that the sentences should run concurrently.

We do not review the record de novo in order to determine whether a sentence is appropriate. *State v. Ellen*, 243 Neb. 522, 500 N.W.2d 818 (1993). In determining whether a sentence is excessively lenient, we consider the following statutory factors: (1) the nature and circumstances of the offense; (2) the history and characteristics of the defendant; (3) the need for the sentence imposed to afford deterrence; (4) the need for the sentence to protect the public from further crimes of the defendant; (5) the need for the sentence to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (6) the need for the sentence to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; and (7) any other matters appearing in the record that the appellate court deems pertinent. *State v. Felix*, 26 Neb. App. 53, 916 N.W.2d 604 (2018). See, also, Neb. Rev. Stat. § 29-2322 (Reissue 2016).

The circumstances of the offenses are clear from the evidence at trial. Dunbar abused the trust of the young girls placed in his care and sexually assaulted them. The district court considered the number of the victims, their age, and the continuing impact that this abuse will have on them. Regarding Dunbar's history and characteristics, the district court identified and gave credit to his long service in the military and time as a captain of the Omaha Fire Department. The court also considered that Dunbar was 67 years old at the time of sentencing and that he had significant medical issues, including his diagnosis as a diabetic. We further note that Dunbar had no prior convictions that resulted in incarceration, although he did have a prior conviction for misdemeanor assault and was placed on probation which resulted in his retirement from the Omaha Fire Department, and no prior evidence of sexual assault of children. Dunbar also completed a number of assessments to establish his risk of reoffending; he scored in the moderate-high risk level on the

VASOR scale, and in the low risk category for the combined Stable 2007 and Static 99 R assessments.

While we keep in mind the necessity of providing a sentence which reflects the seriousness of Dunbar's offenses and the need to provide a just punishment, we cannot say the district court committed an abuse of discretion, either in imposing the sentences for each count or in ordering them to run concurrently. We would also note that since Dunbar's crimes were Class 1B felonies and carry a mandatory minimum sentence of 15 years in prison, Dunbar is not eligible for parole until he has served 15 years and is not eligible for absolute discharge until he has served 15½ years. Given the mandatory prison time imposed, Dunbar's age, his health problems, his prior military service, his employment with the Omaha Fire Department, and the relatively low risk level of reoffending, coupled with the lack of prior history, we cannot find that the sentence was excessively lenient, particularly given our standard of review. As such, we affirm the district court's sentencing in each of the three cases.

## CONCLUSION

We conclude that the district court did not abuse its discretion in joining each of the cases for a single trial and did not abuse its discretion in denying Dunbar's motion for mistrial. We further conclude that the district court did not abuse its discretion in sentencing Dunbar. Therefore, the orders of the district court are affirmed.

AFFIRMED.