*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 08a0271p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

UNITED STATES OF AMERICA,
          *Plaintiff-Appellee/Cross-Appellant,*

          *v.*

GREGORY A. DRIVER,
          *Defendant-Appellant/Cross-Appellee.*

Nos. 04-4470/4471

>

---

Appeal from the United States District Court
for the Northern District of Ohio at Toledo.
No. 03-00739—David A. Katz, District Judge.

Argued: April 24, 2008

Decided and Filed: August 1, 2008

Before: DAUGHTREY, GILMAN, and ROGERS, Circuit Judges.

---

**COUNSEL**

**ARGUED:** Melinda S. Campbell, THOMPSON HINE, Columbus, Ohio, for Appellant. Joseph R. Wilson, ASSISTANT UNITED STATES ATTORNEY, Toledo, Ohio, for Appellee. **ON BRIEF:** Melinda S. Campbell, William R. Case, THOMPSON HINE, Columbus, Ohio, for Appellant. Joseph R. Wilson, Ava M. Rotell Dustin, ASSISTANT UNITED STATES ATTORNEYS, Toledo, Ohio, for Appellee.

---

**OPINION**

---

ROGERS, Circuit Judge. This case is part of a consolidated appeal involving thirteen defendants who were members of the Outlaw Motorcycle Club ("OMC"), an international motorcycle club with chapters across the country and around the world. In 1997, the Federal Bureau of Investigation and state law enforcement agencies began an investigation into the Green region of the OMC, which consists of chapters in Dayton, Ohio; Fort Wayne, Indiana; Louisville, Kentucky; Indianapolis, Indiana; and Oklahoma City, Oklahoma. As a result of the investigation, a grand jury in the Northern District of Ohio returned a 40-count indictment in 2003 charging the defendants with various federal offenses, including Racketeer Influenced and Corrupt Organizations Act ("RICO"), drug trafficking, and firearms offenses. The defendants were tried together before an anonymous jury.

Defendant Gregory A. Driver was a member of the Green region of the OMC. Following trial, Driver was convicted of one count of substantive RICO, in violation of 18 U.S.C. § 1962(c),

one count of RICO conspiracy, in violation of 18 U.S.C. § 1962(d), and one count of conspiracy to possess with intent to distribute narcotics, in violation of 21 U.S.C. § 846. On October 18, 2004, Driver was sentenced to 168 months' imprisonment on all counts, to run concurrently.

Driver raises four issues on appeal: (1) that the district court erred in failing to sever his trial; (2) that his confrontation rights were violated by the admission at trial of out-of-court statements made by one of his co-defendants; (3) that the evidence at trial was not sufficient to convict him on all counts; and (4) that the district court committed various sentencing errors. In addition, the government argues correctly on cross-appeal that the district court erred in failing to consider the imposition of a firearm enhancement with respect to Driver's sentence. We agree that the evidence was not sufficient to convict Driver of the substantive RICO and RICO conspiracy offenses, but Driver's other contentions lack merit. For the reasons set forth below, we reverse the two RICO convictions, affirm Driver's drug conspiracy conviction, vacate Driver's sentence, and remand the case to the district court for resentencing consistent with this opinion.

## I.

The first two of Driver's contentions—that the district court erred in failing to sever his trial and that his confrontation rights were violated during trial—are without merit. Driver initially argues that the district court abused its discretion when it required Driver to defend himself at a trial with his co-defendants. In support of this argument, Driver points to the admission at trial of evidence regarding various acts of violence perpetrated by other OMC members. Driver argues that he was prejudiced by the admission of this evidence.

This contention is without merit because Driver did not meet the high standard required to prevail on a severance motion. Rule 8(b) of the Federal Rules of Criminal Procedure provides that defendants may be charged together "if they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses." Fed. R. Crim. P. 8(b). In turn, Rule 14(a) permits a district court to grant severance if joinder "appears to prejudice a defendant or the government." Fed. R. Crim. P. 14(a). This court has noted that, "[a]s a general rule, persons jointly indicted should be tried together." *United States v. Causey*, 834 F.2d 1277, 1287 (6th Cir. 1987). And the Supreme Court has stated that "a district court should grant a severance under Rule 14 only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro v. United States*, 506 U.S. 534, 539 (1993). Even where the risk of prejudice is high, "less drastic measures, such as limiting instructions, often will suffice to cure any risk of prejudice." *Id.* Indeed, "[a] request for severance should be denied if a jury can properly compartmentalize the evidence as it relates to the appropriate defendants." *Causey*, 834 F.2d at 1287. Thus, to prevail on his severance argument, Driver must show "compelling, specific, and actual prejudice from [the] court's refusal to grant the motion to sever." *United States v. Saadey*, 393 F.3d 669, 678 (6th Cir. 2005).

Driver failed to establish such compelling, specific, and actual prejudice. Before deliberations, the district court specifically admonished the jury that it was their duty to consider separately the evidence against, and the guilt of, each defendant. Furthermore,

> a defendant is not entitled to a severance simply because the evidence against a codefendant is far more damaging than the evidence against him. As we noted in *United States v. Warner*, 690 F.2d 545, 553 (6th Cir. 1982): "We recognize that, in a joint trial, there is always a danger that the jury will convict on the basis of the cumulative evidence rather than on the basis of the evidence relating to each defendant. However, we adhere to the view, as previously stated by our court, that '[t]he jury must be presumed capable of sorting out the evidence and considering the

case of each defendant separately.'" *Id.* (citations omitted). The presentation of evidence applicable to more than one defendant is simply a fact of life in multiple defendant cases.

*Causey*, 834 F.2d at 1288. In this case, Driver did not meet his burden of demonstrating compelling, specific, and actual prejudice as a result of being tried with his co-defendants. There was no evidence that the jury was not able to heed the district court's instruction to consider separately the evidence against each defendant, and Driver failed to establish that a specific trial right was compromised as a result of the joint trial. For these reasons, the district court did not abuse its discretion in denying Driver's motion for severance.

Nor does Driver's Confrontation Clause argument require a new trial. Driver contends that the district court erred in allowing the government, through the questioning of Officer Brent Miller, to introduce out-of-court statements made by co-defendant Jason Fowler. Fowler's statements related to two murders and various drug trafficking activity, but in no way implicated Driver. Nevertheless, Driver contends that Fowler's statements helped the government prove the drug conspiracy of which Driver was found to be a part.

At the outset, we question whether the statements that Driver complains of were actually introduced against Driver at trial. "Ordinarily when, at a joint trial, a codefendant's prior statement, testimonial or otherwise, is introduced only against the declarant-codefendant, and not against the complaining codefendant, the latter has suffered no violation of his Sixth Amendment Confrontation Clause rights." *United States v. Vasilakos*, 508 F.3d 401, 407 (6th Cir. 2007). The Supreme Court has recognized an exception to this general rule where a co-defendant's statement facially incriminates the defendant, *see id.*; *Bruton v. United States*, 391 U.S. 123, 135-36 (1968), but the statements Driver complains of do not facially incriminate or even mention Driver.

In any event, the district court did not give a limiting instruction regarding Fowler's statements at the time that those statements were introduced. But even assuming that the statements were introduced, as Driver alleges, to prove the drug conspiracy of which Driver was a part, and assuming that the admission of the statements violated Driver's confrontation rights, any error on the part of the district court in this regard would have been harmless. As discussed more fully in Part II, *infra*, the record contains substantial evidence apart from Fowler's statements (which do not even mention Driver) that Driver knowingly and intentionally joined and agreed to participate in a drug conspiracy formed among OMC members. Accordingly, there is no reasonable possibility that the admission of Fowler's statements made a difference to the jury in convicting Driver of the drug-conspiracy offense. *Cf. United States v. Savoires*, 430 F.3d 376, 382 (6th Cir. 2005).

For these reasons, Driver's severance and confrontation arguments do not warrant a new trial.

## II.

Driver next challenges the sufficiency of the evidence for each of his convictions. Review of the record shows that the evidence at trial was sufficient to convict Driver of the drug conspiracy charged in Count 3 of the indictment, but insufficient to convict Driver of the substantive RICO and RICO conspiracy counts.

This court reviews de novo the sufficiency of the evidence to sustain a conviction. *United States v. Gibson*, 896 F.2d 206, 209 (6th Cir. 1990). Evidence is sufficient to sustain a conviction if "after viewing the evidence in the light most favorable to the prosecution, *and after giving the government the benefit of all inferences that could reasonably be drawn from the testimony*, any rational trier of fact could find the elements of the crime beyond a reasonable doubt." *United States v. M/G Transp. Servs., Inc.*, 173 F.3d 584, 589 (6th Cir. 1999) (citing *Jackson v. Virginia*, 443 U.S.

307, 319 (1979)). In examining claims of insufficient evidence, this court does not "weigh the evidence presented, consider the credibility of witnesses, or substitute [its] judgment for that of the jury." *Id.* at 588-89.

Driver's conviction for the substantive RICO offense was based on the jury's determination that he committed two predicate acts charged in the indictment. The first predicate act was Racketeering Act 1(A), which incorporated the drug trafficking conspiracy count.[1] The second predicate act was Racketeering Act 12, which charged Driver with violating and/or aiding and abetting a violation of the Travel Act, 18 U.S.C. § 1952.[2] Because Driver was charged with and convicted of only two predicate acts, his substantive RICO conviction cannot be sustained if there was insufficient evidence to convict Driver of one of those predicate acts. *See* 18 U.S.C. § 1961(5) (stating that a "pattern of racketeering activity" for purposes of 18 U.S.C. § 1962(c) requires at least two acts of racketeering activity).

Initially, Driver contends that the evidence was insufficient to convict him of Racketeering Act 1(A). And because Racketeering Act 1(A) incorporated Count 3, the drug conspiracy count, Driver concomitantly argues that his conviction for the drug conspiracy must be reversed as well. Driver's arguments in this regard are not persuasive. To prove a narcotics conspiracy under 21 U.S.C. § 846, the government must prove beyond a reasonable doubt "(1) an agreement to violate drug laws, (2) knowledge and intent to join the conspiracy, and (3) participation in the conspiracy." *United States v. Gibbs*, 182 F.3d 408, 420 (6th Cir. 1999) (quoting *United States v. Welch*, 97 F.3d 142, 148 (6th Cir. 1996)). "Proof of a formal agreement is not required to establish a conspiracy; 'a tacit or material understanding among the parties' is sufficient." *United States v. Henley*, 360 F.3d 509, 513 (6th Cir. 2004) (quoting *United States v. Pearce*, 912 F.2d 159, 161 (6th Cir. 1990)).

The evidence elicited at trial was sufficient to prove beyond a reasonable doubt that various members of the OMC agreed to violate the drug laws, and that Driver knowingly and intentionally joined and participated in the conspiracy. Testimony at trial indicated that members of the OMC discussed matters related to the drug trade policy at various chapter and "bosses" meetings, and that OMC members regularly dealt in drugs to fulfill financial obligations to the OMC. The record also indicates that Driver knowingly and intentionally entered into at least a tacit agreement to join and participate in this conspiracy. At trial, the government elicited testimony from Ronald Talmadge, a member of the Joliet, Illinois chapter of the OMC and a former OMC regional president. Talmadge testified that he engaged in drug trafficking while a member of the OMC. Talmadge stated that from 1998 to 2001, Frank Wheeler—the former head of the Indianapolis chapter and Green region of the OMC who later presided over the entire international OMC organization—purchased cocaine from Talmadge in quantities of one or more kilograms as often as once per week. Talmadge testified that, on occasion, Driver would pick up the cocaine for

---

[1]Racketeering Act 1(A) alleged that Driver "combine[d], conspire[d], confederate[d] and agree[d]" with other members of the OMC to distribute and possess with intent to distribute various narcotics.

[2]Racketeering Act 12 alleged:

On or about December 29, 2001, in the Northern District of Indiana, Northern District of Ohio, and elsewhere, JAMES L. WHEELER and GREGORY A. DRIVER did knowingly travel in interstate commerce from the State of Indiana, to Toledo, Ohio, with the intent to promote, manage, establish, carry on, and facilitate the promotion, management, establishment, or carrying on, of an unlawful activity, to wit, a business enterprise involving distribution and possession with intent to distribute controlled substances in violation of Title 21, United States Code, Section 846, and thereafter did perform and attempted to perform acts to promote, manage, establish, carry on, and facilitate the promotion, management, establishment or carrying on said unlawful activity, in violation of Title 18, United States Code, Sections 1952 and 2.

Wheeler. Driver would typically bring $20,000 to $30,000 to pay Talmadge for each transaction. Karen Driver, Driver's wife, testified that Driver was a probate member and patched member of the OMC during their marriage. She testified that after Driver became a probate member of the OMC, he began selling cocaine obtained from Dominic Mangine, another OMC member. Karen Driver further testified that she helped Driver and Mangine package and weigh cocaine at Mangine's home. She also stated that Driver sold drugs obtained from OMC members Garland and Walker.

When viewed in the light most favorable to the government, this evidence is sufficient for a rational trier of fact to conclude beyond a reasonable doubt that members of the OMC agreed to violate the drug laws, and that Driver knowingly and intentionally joined and participated in the conspiracy. Accordingly, the jury properly found that Driver committed Racketeering Act 1(A) and, consequently, the evidence was also sufficient to convict Driver of the narcotics conspiracy count.

Moreover, and contrary to Driver's argument, the evidence was sufficient for the jury to conclude that Driver was responsible for 5 kilograms or more of cocaine. As discussed above, Talmadge testified that he and Frank Wheeler dealt in cocaine in quantities of one or more kilograms as often as once per week and that, on occasion, Driver would pick up the cocaine from Talmadge in Joliet and pay Talmadge anywhere from $20,000 to $30,000. Although Driver argues on appeal that Talmadge's testimony "supports at most a total of two kilograms," Talmadge's testimony was sufficient to allow a rational trier of fact to find that Driver was responsible for the drug quantity found by the jury. Talmadge's testimony clearly implies that Driver transported cocaine for Wheeler on more than just a few occasions. In light of the significant trial testimony linking Driver to the packaging, distribution, and transportation of cocaine, the jury's drug quantity finding was sufficiently supported by the evidence at trial.

The above notwithstanding, the evidence was not sufficient for the jury to conclude beyond a reasonable doubt that Driver committed Racketeering Act 12. Because this leaves only Racketeering Act 1(A) to support Driver's substantive RICO conviction, that conviction must be reversed. To prove a violation of the Travel Act, the government was required to establish the following elements: "(1) that the defendant 'travels in interstate or foreign commerce' (2) 'with intent to . . . promote, manage, establish, carry on, or facilitate the promotion, management, establishment, or carrying on, of any unlawful activity' and (3) that the defendant 'thereafter performs or attempts to perform' an act of promotion, management, establishment, or carrying on of any unlawful activity." *United States v. Burns*, 298 F.3d 523, 537 (6th Cir. 2002) (quoting 18 U.S.C. § 1952(a)(3)). The government alleged that the crime promoted, managed, established, carried on, or facilitated was the drug conspiracy discussed above.

The record does not support the jury's finding that Driver committed Racketeering Act 12. Specifically, there is no evidence establishing that Driver himself violated the Travel Act or aided and abetted Wheeler in violating the Travel Act. On appeal, the government points to only the testimony of Gary Watkins in support of Driver's commission of Racketeering Act 12. During trial, Watkins, who was a member of the OMC, testified regarding a trip from Indiana to Toledo, Ohio that occurred in late December 2001. Watkins testified that he, Driver, Wheeler and other OMC members traveled from Indiana to Toledo in a van so that Wheeler could attend a "bosses meeting." Watkins testified that after arriving in Toledo, members of the OMC partied at the clubhouse while the bosses, Wheeler included, held their meeting in a back room. Watkins did not attend the bosses meeting and offered no evidence that Driver attended the meeting. Watkins did not testify to the subject matter of the meeting, and there is no other evidence in the record indicating what was discussed during the meeting. The government nevertheless contends, based on Watkins's testimony, that the evidence was sufficient to prove that Driver aided and abetted Wheeler's violation of the Travel Act. The government argues that other testimony in the record established that OMC members regularly engaged in drug distribution and that drug distribution was frequently discussed at various OMC meetings. Because Driver accompanied Wheeler to Toledo for one such

meeting, the government asserts, Driver aided and abetted Wheeler's commission of the Travel Act violation.

We cannot sustain Driver's substantive RICO conviction on either the theory that Driver himself violated the Travel Act or the theory that Driver aided and abetted Wheeler's violation of the Travel Act. Even if evidence in the record supports an inference that the bosses meeting in Toledo served to facilitate the drug conspiracy among OMC members, there is simply no evidence that Driver himself traveled to Toledo with the intent "to . . . promote, manage, establish, carry on, or facilitate the promotion, management, establishment, or carrying on" of that illegal activity. There is also no evidence that, once in Toledo, Driver performed or attempted to perform "an act of promotion, management, establishment, or carrying on of any unlawful activity." The record is devoid of evidence that Driver attended the meeting, facilitated the meeting, or even knew what would be discussed at the meeting. And at most, Watkins's testimony establishes that Driver may have "partied" once in Toledo. Further, Watkins's testimony merely establishes that Driver accompanied Wheeler to Toledo, where Wheeler attended the meeting. Even if the meeting did facilitate the drug conspiracy, the record does not support a finding that Driver aided and abetted Wheeler. To establish aiding and abetting, the government must prove that Driver (1) committed an act that contributed to the execution of a crime, and (2) intended to aid the commission of the crime. *United States v. Davis*, 306 F.3d 398, 409 (6th Cir. 2002). There must be evidence that Driver "offered assistance or encouragement to his principal in the commission of [the] substantive offense." *Id.* (quoting *United States v. Webber*, 208 F.3d 545, 553 (6th Cir. 2000)). That Driver merely rode in the same van as Wheeler to Toledo does not establish that Driver contributed to or offered assistance or encouragement to Wheeler's Travel Act violation. Indeed, the government does not even allege that Driver was the operator of the van. *Cf. United States v. Pena*, 983 F.2d 71, 72-73 (6th Cir. 1993) (holding that defendant's presence as a passenger in a car was insufficient to establish aiding and abetting liability because defendant took no steps to assist in the transportation or delivery of the drugs found in the car). In sum, because there is insufficient evidence to support a finding that Driver committed Racketeering Act 12, Driver's conviction on the substantive RICO count must be reversed.

From the above, however, it does not necessarily follow that Driver's RICO conspiracy conviction must be reversed. *Cf. United States v. Joseph*, 781 F.2d 549, 554 (6th Cir. 1986). To prove a RICO conspiracy charge, it is not necessary to show that the defendant committed two predicate acts himself or agreed to commit two predicate acts himself. *See United States v. Saadey*, 393 F.3d 669, 676-77 (6th Cir. 2005). As the Supreme Court explained in *Salinas v. United States*, 522 U.S. 52 (1997):

> It makes no difference that the substantive offense under § 1962(c) requires two or more predicate acts. The interplay between subsections (c) and (d) does not permit us to excuse from the reach of the conspiracy provision an actor who does not himself commit or agree to commit the two or more predicate acts requisite to the underlying offense. . . . In some cases the connection the defendant had to the alleged enterprise or to the conspiracy to further it may be tenuous enough so that his own commission of two predicate acts may become an important part of the Government's case. Perhaps these were the considerations leading some of the Circuits to require in conspiracy cases that each conspirator himself commit or agree to commit two or more predicate acts. Nevertheless, that proposition cannot be sustained as a definition of the conspiracy offense, for it is contrary to the principles we have discussed.

*Id.* at 65-66. Accordingly, even if there is not sufficient evidence to prove that Driver committed two predicate acts himself or, indeed, that Driver agreed to commit two predicate acts himself, Driver's RICO conspiracy conviction can be sustained if there is evidence sufficient to prove that

Driver agreed that *someone* would commit two predicate acts. *See Saadey*, 393 F.3d at 676 ("While it is not incumbent upon the government to prove that [defendant]—or anyone else—actually committed any of these [predicate] acts, the government must prove that [defendant] intended to further 'an endeavor which, if completed, would satisfy all of the elements of a substantive criminal offense [and] it suffices that he adopt the goal of furthering or facilitating the criminal endeavor.'" (quoting *Salinas*, 522 U.S. at 65)) (citation omitted).

As noted above, there was sufficient evidence to establish that Driver committed Racketeering Act 1(A). From this a rational trier of fact could reasonably conclude that Driver agreed to the commission of at least one predicate act. *See United States v. Hughes*, 895 F.2d 1135, 1141 (6th Cir. 1990) ("Defendants' agreement to participate in the RICO conspiracy may be inferred from their acts."). But the record is simply not sufficient for this court to conclude that Driver agreed to the commission of any other predicate act alleged in the indictment. For the reasons discussed earlier, there is not sufficient evidence in the record from which a rational trier of fact could conclude beyond a reasonable doubt that Driver committed or assented to the Travel Act violation alleged as Racketeering Act 12. Further, we find no other evidence, and the government fails to point us to any, indicating that Driver agreed that either he or someone else would commit any other racketeering act charged in the indictment (besides Racketeering Act 1(A)). At oral argument, the government alluded to Driver's extensive involvement with co-defendant Robert Keeler, the head of the Fort Wayne OMC chapter. That Driver may have had extensive contact with Keeler, however, does not establish that Driver assented to any of the predicate acts allegedly attributable to Keeler. Driver's mere association with the OMC is not sufficient to prove that he conspired with other OMC members to violate the RICO statute. Thus, because the evidence was insufficient to establish that Driver "intended to further 'an endeavor which, if completed, would satisfy all of the elements of [the] substantive [RICO] criminal offense,'" *Saadey*, 393 F.3d at 676 (quoting *Salinas*, 522 U.S. at 65), Driver's conviction for RICO conspiracy must be reversed.

In sum, the evidence was sufficient to convict Driver of the drug conspiracy but insufficient to convict him of the substantive RICO and RICO conspiracy offenses. We therefore affirm Driver's drug conspiracy conviction and reverse Driver's substantive RICO and RICO conspiracy convictions.

### III.

In light of the determination that Driver's substantive RICO and RICO conspiracy convictions must be reversed, we vacate and remand Driver's sentence to the district court for reconsideration. This will provide the opportunity for the district court to "confront the offenses of conviction and facts anew." *See United States v. Quintieri*, 306 F.3d 1217, 1228 (2d Cir. 2002). Nevertheless, to provide guidance to the district court on remand, we address certain of Driver's and the government's sentencing arguments below.[3]

Driver contends on appeal that, with respect to his conviction for the drug trafficking conspiracy, the district court erroneously determined that Driver was responsible for in excess of 15 kilograms of cocaine. Contrary to Driver's argument, however, the testimony elicited at trial provided a sufficient basis from which the district court could conclude that Driver was responsible for the amount determined. In determining a base offense level of 34 under U.S.S.G. § 2D1.1(a)(3), (c)(3), the district court noted that

> [c]learly there was so much cocaine attested to by Mr. Talmadge and others attributable to Wheeler and as to which Mr. Driver would have been the mule that

---

[3] Because we vacate and remand Driver's sentence, it is not necessary to address Driver's Sixth Amendment and reasonableness arguments.

> it seems to me, and I will conclude, that level 34 is applicable for the reasons stated in paragraph 38 of the presentence investigation.

As discussed above, OMC member Talmadge testified at trial that Talmadge and Frank Wheeler dealt in cocaine in quantities of one or more kilograms as often as once per week and that, on occasion, Driver would pick up the cocaine for Wheeler and pay Talmadge as much as $20,000 to $30,000. Talmadge's testimony clearly implies that Driver transported cocaine for Wheeler on more than just a few occasions. And in light of the other testimony linking Driver and his OMC co-conspirators to the packaging and distribution of cocaine, the district court's determination that Driver was responsible for more than 15 kilograms of cocaine was not clearly erroneous. *See United States v. Sandridge*, 385 F.3d 1032, 1037 (6th Cir. 2004) (standard of review). The district court is therefore not required to redetermine on remand the drug quantity attributable to Driver.

On cross-appeal the government argues that the district court erred in failing to impose a two-level dangerous-weapon increase with respect to Driver's sentence. We agree that the district court improperly declined to consider the two-level increase. During the sentencing hearing, the government argued for the two-level increase pursuant to U.S.S.G. § 2D1.1(b)(1). The government based its argument on the trial testimony of Gary Watkins. Watkins testified that on a trip to Saginaw, Michigan for a funeral, police pulled Driver and Watkins over while they were driving in Driver's pick-up truck. Watkins testified that Driver was armed with a firearm at that time and that drugs were present in the truck. Driver asked Watkins to kick the drugs out of the truck, but Watkins refused. During the sentencing hearing, the district court refused to apply the dangerous-weapon enhancement in spite of Watkins's testimony because "the jury was asked to find nothing about that."

Watkins's testimony was sufficient for the district court to determine by a preponderance of the evidence that Driver possessed a dangerous weapon while engaged in the drug conspiracy. The district court's reason for not applying the enhancement—that there was no jury finding that Driver possessed a dangerous weapon—has since been discredited by the Supreme Court's decision in *United States v. Booker*, 543 U.S. 220 (2005), and subsequent decisions of this court. *See, e.g.*, *United States v. Sexton*, 512 F.3d 326, 329-30 (6th Cir. 2008) ("This court has squarely rejected defendants' contention that *Booker* and [*Blakely*] require all factual findings affecting a sentence's severity to be made by a jury beyond a reasonable doubt.") (citation omitted).[4] On remand, the district court must reconsider application of the two-level enhancement for possession of a dangerous weapon.

## IV.

For the foregoing reasons, we affirm Driver's conviction for the drug conspiracy, reverse Driver's convictions for the substantive RICO and RICO conspiracy offenses, and vacate and remand Driver's sentence for resentencing consistent with this opinion.

---

[4]In fairness to the district court, we note that Driver's sentencing took place during a time of uncertainty in federal sentencing—the period between the Supreme Court's *Blakely* and *Booker* decisions.