NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 14a0143n.06

No. 13-1131

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
Feb 19, 2014
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| Plaintiff-Appellee, | ) | STATES DISTRICT COURT FOR THE |
| | ) | EASTERN DISTRICT OF MICHIGAN |
| v. | ) | |
| | ) | |
| TOM GJOKAJ, | ) | O P I N I O N |
| | ) | |
| Defendant-Appellant. | ) | |

**Before: McKEAGUE and STRANCH, Circuit Judges; COLLIER, District Judge.**[*]

**CURTIS L. COLLIER**, District Judge. Defendant-Appellant Tom Gjokaj ("Defendant") appeals his conviction following a jury trial in the Eastern District of Michigan. Defendant was convicted of bank fraud in this multi-defendant mortgage fraud case. He seeks a new trial based on assertions of improper dismissal of a juror during trial, prejudicial joinder, and an incorrect evidentiary ruling. For the following reasons, we **AFFIRM** Defendant's conviction.

**I**

Defendant and codefendants James Wiese ("Wiese") and Ilir Dokaj ("Dokaj") were indicted in 2009 for taking part in a mortgage fraud conspiracy. The indictment alleged that Defendant, an out-of-work house painter, took out fraudulent mortgages to "purchase" twelve suburban Detroit homes from Wiese, a real estate developer. The government's theory was that to fraudulently obtain

---

[*]The Honorable Curtis L. Collier, United States District Judge for the Eastern District of Tennessee, sitting by designation.

money from mortgage lenders, Wiese funneled money through Dokaj to Defendant, who would then use it for down payments and earnest money deposits to purchase Wiese's properties. Wiese used his connections in the mortgage brokering industry, including broker John Veraldi ("Veraldi"), to ensure Defendant would qualify for the loans. Defendant submitted false documentation to the mortgage lenders in support of his loan applications. The government alleged Wiese funneled $813,800 to Defendant through the scheme and that the conspiracy ultimately defrauded various banks of over $7.5 million.

All of the defendants were indicted for conspiracy, bank fraud, and wire fraud. Wiese alone was indicted for money laundering. The jury acquitted all defendants of wire fraud, acquitted Wiese and Dokaj of bank fraud, and could not reach a verdict on the conspiracy charges or Wiese's money laundering charge. Defendant, the only one found guilty, was convicted of bank fraud. In exchange for cooperating as a government witness at Wiese's second trial (which acquitted Wiese) Defendant received a sentence reduction under USSG § 5K1.1 and was sentenced to one year and one day.

During the government's initial investigation, Wiese spoke to the FBI about his dealings with mortgage broker Veraldi, to whom Wiese had referred Defendant to obtain half of the fraudulent loans. Wiese told the FBI that Veraldi had told him about Veraldi's criminal background, that Veraldi was under investigation for mortgage fraud, and that Veraldi threatened to have Wiese "wacked" or "disappeared" if he informed on Veraldi. The FBI produced a memorandum regarding the interview (the "FBI Memorandum").

Defendant filed a motion *in limine* to introduce certain portions of the FBI Memorandum and to allow Defendant to examine the FBI agents about the interview statements. Veraldi, who was not indicted, invoked his Fifth Amendment right not to testify at trial. Defendant argued to the court

that the FBI Memorandum would show that Wiese and Veraldi manipulated Defendant and that the government failed to properly investigate that manipulation. The court denied Defendant's motion to introduce this evidence, ruling that the relevant statements were inadmissible hearsay. When counsel for the defendants and the government argued the motion before the court, Wiese's attorney expressed concern that admitting the portions of the FBI Memorandum in question would prejudice Wiese. However, the court ruled the statements inadmissible on hearsay grounds, not because they may have potentially prejudiced Wiese.

A separate appeal issue relates to apparent jury tampering that occurred during a several-day recess in the trial. On the morning of Wednesday, May 25, 2011, Juror No. 3 reported to court staff that the prior evening a stranger had come to her home wanting to talk about the trial. The man told her that "the government is trying to deceive you," or words to that effect. She refused to talk to him, called the police, and filed a police report. The next afternoon, the court held a conference call with counsel for Defendant, Dokaj, and the government to discuss the matter. Wiese's attorney was called but was unavailable. Over Defendant's counsel's objection the court dismissed Juror No. 3, a decision with which the prosecution and Dokaj's counsel agreed. Upon learning of the juror's dismissal, Wiese also raised an objection.

When the trial resumed six days later, the court addressed the defendants' objection that a hearing should have been held before dismissing the juror. The court explained that, under the circumstances, it would have excused the juror with or without a hearing:

> Let me just say that at the time the Court made a decision to excuse Juror Number 3, it seemed to me that her excus[al] was inevitable, that there wasn't anything that would happen later in terms of voir dire of the juror or anything else that was going to change the fact that she had been confronted and said -- and told something that could be regarded as threatening with regard to this case. And I believed then and I believe now that there was no way -- no set of facts or interpretation of the facts

-3-

that could have come out that would have resulted in anything other than her being excused from the jury.

. . . .

When the police department and the marshal service . . . have had contact with her and she with them about what went on, and are still conducting an investigation, there's no way this person is going to sit on this jury, and it doesn't -- no voir dire is going to cure that. No evidentiary hearing is going to cure that.

The court was also concerned that having Juror No. 3 return to the courthouse and take part in a hearing to determine whether she could be impartial risked influencing the other jurors.[1]

When the jury was called back, the court reminded the jurors they were not to discuss the case with anyone and that it was their duty to inform the court if anyone attempted to communicate with them. The court instructed that if any improper communication with jurors occurred, jurors should send the court a note through the court officers or call chambers and tell court staff about the issue. None of the jurors responded.

On the day the jury tampering was uncovered, Dokaj told his counsel that he believed Wiese was responsible for it. Dokaj's counsel then told the prosecution, but not the court, that he suspected Wiese was involved. The prosecutors immediately stepped back, and a different team of federal lawyers and investigators, cordoned off from the trial team by a "Chinese wall," undertook the jury

---

[1]The Court explained in greater detail:

[T]o have this juror, Juror Number 3, come in with the other jurors and I didn't think that was a good idea all by itself. Although obviously she could be drawn aside by CSOs or something, but even that it seems to me would communicate something that we'd rather not communicate. And again, for what purpose? She's going to be excused anyway.

And of course if she didn't get held up and she went in with the jurors, and then she got talked to in some kind of voir dire, it very likely could have had some impact on the jurors and they could be bothered in some way by whatever it is Juror Number 3 might say on voir dire, and that's especially true because she'd filed a police report and she had contact with the marshal service.

-4-

tampering investigation. After the trial concluded and Defendant was found guilty of bank fraud, the government moved for a *Remmer* hearing. The court held the hearing and determined that the remaining jurors had not been affected by the jury tampering; none had been contacted about the case or knew that Juror No. 3 had.[2]

Another appeal issue relates to joinder of the defendants. At several points during the proceedings, Defendant argued that his trial should be severed from Wiese's because they had mutually antagonistic defenses. After trial, the court ordered that Wiese be severed from Defendant and Dokaj for retrial on the charges for which the jury did not reach a verdict. The court denied Defendant's post-trial motion to vacate his guilty verdict. Defendant argued, *inter alia*, that the court decision to sever the defendants upon retrial showed Defendant was prejudiced by having been tried with Wiese. However, the court noted that the decision to sever Wiese from the other defendants was based on prejudice to *Wiese*, not to Defendant, because of the allegations that Wiese was behind the jury tampering, along with a prediction that Defendant and Dokaj would attack Wiese during a second trial as a sophisticated manipulator.

---

[2]In response to Defendant's motion for a mistrial because of the juror's dismissal, the district court

> conclude[d] that it does not have any other basis to declare a mistrial as a result of alleged jury tampering, given that all of the deliberating jurors testified at the August 10, 2011 *Remmer* hearing that no one attempted to affect their deliberations. The court has no evidence that any other juror was contacted or was aware that another juror had been contacted. Accordingly, the verdict rendered after the first trial will stand.

## II

## A

Defendant first argues that the court committed reversible error by dismissing Juror No. 3, over Defendant's objection, without first holding a hearing to determine whether she could remain impartial. This court reviews a district court's decision regarding juror impartiality for abuse of discretion. *United States v. Shackelford*, 777 F.2d 1141, 1145 (6th Cir. 1985). "Due process requires that a defendant in a criminal case be tried fairly by a panel of impartial, indifferent jurors." *Mays v. Chandler*, 342 F. App'x 159, 166 (6th Cir. 2009) (citing *Irvin v. Dowd*, 366 U.S. 717, 722 (1961)) (quotation marks omitted). Further, when credible evidence of jury tampering surfaces, the district court is to investigate and determine whether each member of the jury can remain impartial. *Remmer v. United States*, 347 U.S. 227, 229-30 (1954) (directing that after potential jury tampering is uncovered the trial court "should determine the circumstances, the impact thereof upon the juror, and whether or not it was prejudicial, in a hearing with all interested parties permitted to participate"); *see also United States v. Rigsby*, 45 F.3d 120, 124-25 (6th Cir. 1995) ("When there is a credible allegation of extraneous influences, the court must investigate sufficiently to assure itself that constitutional rights of the criminal defendant have not been violated.").

The present case is unlike most cases dealing with jury tampering, as Defendant does not contend he was tried by a potentially tainted jury. Defendant does not deny the court properly determined, after holding a post-trial *Remmer* hearing, that the jurors who found Defendant guilty had not been exposed to extraneous influences. *See Smith v. Phillips*, 455 U.S. 209, 218 (1982) (noting that "a post-trial hearing . . . is sufficient to decide allegations of juror partiality"). Here, the juror whose impartiality was at issue was taken *off* the jury not kept on it. Defendant objected to

losing the juror because he viewed her as favorable to his side. He argues that before removing her the court was required to hold a hearing to determine whether or not she could remain impartial.

Defendant cites no authority for this proposition. Although the court has not previously addressed this factual scenario, our precedent regarding juror dismissal shows the district court did not err. The United States Supreme Court and this court have prescribed certain measures to be taken before a potentially tainted juror may be left *on* a jury (or before allowing a potentially tainted jury verdict to stand). *See, e.g.*, *Remmer*, 347 U.S. at 229-30; *United States v. Corrado*, 227 F.3d 528, 536 (6th Cir. 2000). We have never required, however, that a judge with reason to question a juror's ability to remain impartial hold a *Remmer*-type hearing before *removing* the juror.

Instead, as we explained in a case upholding a district court's removal of a sleeping juror, pursuant to Federal Rule of Criminal Procedure 24(c),

> a trial court may, in the exercise of its sound discretion, substitute an alternate juror for a regular juror who has become unable or disqualified to perform his duties. The trial court's exercise of its discretion in this regard is not to be disturbed absent a showing of bias or prejudice to the defendant.

*United States v. Gabrion*, 648 F.3d 307, 338 (6th Cir. 2011) *rev'd en banc on other grounds* 719 F.3d 511 (6th Cir. 2013) (citing *United States v. Cameron*, 464 F.2d 333, 335 (3rd Cir.1972)); *see also United States v. Coleman*, 997 F.2d 1101, 1106 (5th Cir. 1993) (holding that "[a] trial judge may remove a juror whenever the judge becomes convinced that the juror's abilities to perform his duties have become impaired," and that the appellate court "will not disturb the judge's finding on appeal except for a want of any factual support or for a legally irrelevant reason . . . . *No evidentiary hearing is necessary* . . . and the scope of the investigation is committed to the district court's sound discretion") (emphasis added) (internal quotation marks and citations omitted); *United States v.*

*Domenech*, 476 F.2d 1229, 1232 (2d Cir. 1973) (holding district court did not abuse its discretion in removing juror, over defendant's objection, who was 10 minutes late for last day of trial).

Here, we cannot say the district court abused its discretion in dismissing Juror No. 3 based on its determination that she had become unable to perform her duties after being subject to a jury tampering attempt. The juror reported being approached at her home at night by a man she did not know. He told her that the government was trying to deceive the jury. She reported the incident to police and court staff; law enforcement immediately began an investigation. In the court's post-trial denial of Defendant's motion to declare a mistrial, it noted that "[h]ad this juror expressed her belief that she could remain impartial, the court would have excused her nonetheless based upon the circumstances and to avoid an appearance of impropriety."[3] The court was also concerned that holding a mid-trial *Remmer* hearing would have only risked influencing the remaining jurors—who it turned out were unaffected by the tampering.

Further, Defendant has not shown that removal of the juror produced any bias or prejudice. *See Gabrion*, 648 F.3d at 338. As the Ninth Circuit has observed, it is "difficult to see what prejudice could result from placing an alternate juror, approved by the defendants, on the jury in place of a juror who cannot fairly perform his duties." *United States v. Lustig*, 555 F.2d 737, 745-46 (9th Cir. 1977). No one has questioned the alternate juror's impartiality. And Defendant's perception that the dismissed juror was favorable to his defense does not mean he was prejudiced by replacing her with the impartial alternate. Defendant had the right to an impartial jury, not a

---

[3]See *infra* pp. 3-5 for the court's more detailed rationale expressed during trial.

favorable one. In short, the court did not abuse its discretion by dismissing Juror No. 3 without first holding a hearing to determine whether she could remain impartial.[4]

**B**

Defendant next argues that the district court erred in not ordering a mistrial based on prejudicial joinder, particularly in light of the court's ruling following trial that Wiese would be severed from his codefendants on retrial because of antagonistic defenses and the jury tampering episode. The court reviews a district court's severance decision for abuse of discretion. *United States v. Anderson*, 89 F.3d 1306, 1312 (6th Cir. 1996).

Under Federal Rule of Criminal Procedure 8(b), an "indictment or information may charge 2 or more defendants if they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses." Normally, defendants charged together are tried together: "There is a preference in the federal system for joint trials of defendants who are indicted together," as such trials "promote efficiency and 'serve the interests of justice by avoiding the scandal and inequity of inconsistent verdicts.'" *Zafiro v. United States*, 506 U.S. 534, 537 (1993) (quoting *Richardson v. Marsh*, 481 U.S. 200, 210 (1987)).

That said, "[i]f the joinder of offenses or defendants in an indictment, an information, or a consolidation for trial appears to prejudice a defendant or the government, the court may order

---

[4]Defendant also argues that Juror No. 3's dismissal is problematic because the government waited until after the post-trial *Remmer* hearing to inform the court that the government learned Wiese might have been behind the tampering. Yet Defendant does not show how this could—never mind did—prejudice him. The government explained that once informed that Wiese might have been involved in the jury tampering, a separate government team, which had no further communications about the matter with the trial team, was brought in to investigate. And given that the *Remmer* hearing showed the remaining jurors were in fact impartial, Defendant cannot claim to have been prejudiced by any delay in informing the court of the alleged tampering suspect's identity.

separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires." Fed. R. Crim. P. 14(a). Mutually antagonistic or irreconcilable defenses may at times prejudice defendants. There is no bright-line rule, however, mandating severance where defendants have such defenses, as "[m]utually antagonistic defenses are not prejudicial *per se*." *Zafiro*, 506 U.S. at 538. Indeed, "Rule 14 does not require severance even if prejudice is shown; rather, it leaves the tailoring of the relief to be granted, if any, to the district court's sound discretion." *Id.* at 538-39. Even when risk of prejudice is high, "less drastic measures, such as limiting instructions, often will suffice to cure any risk of prejudice." *Id.* at 539. Moreover, "it is well settled that defendants are not entitled to severance merely because they may have a better chance of acquittal in separate trials." *Id.* at 540.

Once properly joined under Rule 8(b), "a district court should grant a severance under Rule 14 only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Id.* at 539. In sum, to prevail on his severance argument Defendant would need to show "compelling, specific, and actual prejudice from [the] court's refusal to grant the motion to sever." *United States v. Driver*, 535 F.3d 424, 427 (6th Cir. 2008) (internal quotation marks and citation omitted).

Defendant does not contend the defendants should not have been joined in the same indictment pursuant to Rule 8(b), as they were alleged to have engaged in the same series of acts or transactions. Instead, the thrust of Defendant's severance argument is that his trial should have been severed from Wiese's under Rule 14(a) because trying them together harmed Defendant's ability to present his antagonistic defense. Specifically, Defendant argues prejudice was illustrated by the court's refusal to allow him to cross examine FBI agents regarding statements in the FBI

-10-

Memorandum that he considered exculpatory. *See Zafiro*, 506 U.S. at 539 (observing that "a defendant might suffer prejudice if essential exculpatory evidence that would be available to a defendant tried alone were unavailable in a joint trial"). Further, Defendant argues, the codefendants' antagonistic defenses heightened the risk that the jury would convict Defendant, without proof beyond a reasonable doubt, in order to rationalize an acquittal of Wiese. Defendant contends this forced him to act as a "second prosecutor" against Wiese in an effort to show he was a sophisticated manipulator.

Defendant does not explain how this speculation amounts to "compelling, specific, and actual prejudice" that would warrant reversing his conviction. *Driver*, 535 F.3d at 427. First, it is not at all clear that the information in the FBI Memorandum about Veraldi's checkered past, suspected involvement in mortgage fraud, and threats to Wiese would have made an actual difference in Defendant's defense. As the government points out, if Defendant's theory was that Wiese manipulated him and sent him to questionable mortgage brokers, Defendant had the opportunity to—and did—explore that theory by examining the other brokers whom Wiese arranged to handle Defendant's fraudulent mortgage applications. Furthermore, Defendant never demonstrates how the FBI Memorandum would have contributed to his assertion that the government's investigation was not thorough and was a "rush to judgment." The Supreme Court has explained that "a defendant might suffer prejudice if *essential* exculpatory evidence" is rendered inadmissible because of joinder. Here, even if *arguendo* the FBI Memorandum had some exculpatory value, it certainly did not rise to the level of essential exculpatory evidence.

Defendant counters that the court acknowledged prejudice had occurred when it decided to sever Wiese from Defendant and Dokaj upon retrial. Defendant argues that pursuant to the court's

-11-

power to "provide any other relief that justice requires" to remedy prejudicial joinder, Fed. R. Crim. P. 14(a), the court should have also declared a mistrial and vacated Defendant's conviction. Defendant directs our attention to the district court's post-trial order, which notes that "[u]nder all the circumstances, including the antagonistic defenses presented by the defendants and the accusations of jury tampering, the court concludes that severance is warranted." From Defendant's perspective, so far so good. But Defendant fails to acknowledge the last sentence of the paragraph: "The defenses proposed by Gjokaj and Dokaj create a serious risk of *prejudice to Wiese*. Accordingly, Gjokaj and Dokaj will be tried separately from Wiese." (emphasis added). Essentially, the antagonistic defenses giving rise to the court's decision to sever threatened harm primarily to Wiese, as Dokaj and Defendant would focus on attacking him as a master manipulator.

Even if there were grounds for severing the defendants before Defendant's conviction, the district court did not abuse its discretion by refraining from doing so and by not ordering a mistrial. "Rule 14 does not require severance even if prejudice is shown; rather, it leaves the tailoring of the relief to be granted, if any, to the district court's sound discretion." *Zafiro*, 506 U.S. at 538-39. And although it is conceivable Defendant would have had a better chance of acquittal if tried separately from Wiese, defendants "are not entitled to severance merely because they may have a better chance of acquittal in separate trials." *Id.* at 540. In sum, because Defendant has failed to show he suffered "compelling, specific, and actual prejudice" from being tried alongside Wiese, we will not reverse his conviction. *Driver*, 535 F.3d at 427.

## C

Defendant's last appeal issue is that the district court abused its discretion by refusing to grant a new trial under Federal Rule of Criminal Procedure 33(a), which provides that on a

"defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." Specifically, Defendant asserts the court should have granted a new trial because of prejudicial joinder, jury tampering, and the court's refusal to admit portions of the FBI Memorandum. Defendant recognizes that the first two grounds raise essentially the same issues resolved above. For the reasons explained above, the Court holds that the district court did not abuse its discretion by declining to grant a new trial based on the joinder and jury tampering issues.

The evidentiary issue also fails to require Defendant's conviction be overturned. The court applies the harmless-error test to questions of evidentiary error. *United States v. Johnson*, 440 F.3d 832, 847 (6th Cir. 2006). "In determining whether an error is harmless, the reviewing court must take account of what the error meant to [the jury], not singled out and standing alone, but in relation to all else that happened." *United States v. Pugh*, 405 F.3d 390, 400-01 (6th Cir. 2005) (alteration in original) (internal quotation marks omitted) (citing *United States v. Hardy*, 228 F.3d 745, 751 (6th Cir. 2000)). "In other words, we must find that it was more probable than not that the error materially affected the verdict." *Id.* at 401 (internal quotation marks omitted) (citing *United States v. Trujillo*, 376 F.3d 593, 611 (6th Cir. 2004)).

Here, similar to his position regarding prejudicial joinder, Defendant asserts the court erred in refusing to grant his motion *in limine* to allow into evidence, and to allow Defendant to question FBI agents regarding, the parts of the FBI Memorandum discussing what Wiese told the FBI Veraldi had said to him. Asserting the court was wrong in considering this inadmissible hearsay, Defendant argues that it either was not hearsay or should have been admitted under various exceptions to the hearsay rule.

The court need not determine whether the statements should have been admitted, however, as any error was harmless. As explained above, Defendant has not articulated a convincing reason for why the statements in the FBI Memorandum at issue (Veraldi's criminal background, mortgage fraud connections, and threats to Wiese) would have been exculpatory to Defendant—or if they were, that they would have made a difference. Defendant had the opportunity to examine the two brokers Wiese had arranged to process half of Defendant's fraudulent mortgages. Defendant had the opportunity to examine law enforcement officers involved in the investigation. Thus, Defendant cannot contend he was deprived of the chance to argue that Wiese and the brokers manipulated him or that the Government failed to complete a thorough investigation. In other words, even if the district court erred in not admitting the evidence, "in relation to all else that happened" Defendant cannot show it was "more probable than not that the error materially affected the verdict." *Pugh*, 405 F.3d at 400-01.

## III

For the foregoing reasons, we **AFFIRM** Defendant's conviction.